**Joe A. Hobbs, Administrator, Appellee, v. Fairview Fluor Spar and Lead Company, Appellant.**

1. MINES AND MINERALS, § 86*—*when negligence in failing to discover and report miss-shots not shown.* Negligence on the part of a mine operator in failing to discover alleged miss-shots in a mine, in which charges of dynamite were set off by an outgoing shift, and to report them to the incoming shift, where injury was sustained by a bowlder breaker of the relieving shift upon striking a bowlder with his hammer, was not shown where it appeared that it was the duty of the bowlder breakers to gather up unexploded dynamite after charges, and, although there was a custom in the mine for the outgoing shift to compare the number of shots with the number of explosions, and, if there was a discrepancy in the number of explosions, to report to the foreman of the incoming shift, there was no evidence as to the number of shots prepared and fired on

the day that deceased was injured, or as to the number of explosions that were heard, and it further appeared that such test was uncertain because frequently more than one shot would be exploded at the same time.

2. MINES AND MINERALS, § 80*—*what is nature of obligation to furnish employee with safe place to work.* The obligation of a mine owner to furnish his employees with a safe place to work has reference to the work or the physical surroundings and not to the work or contract on which an employee is working.

3. MINES AND MINERALS, § 80*—*when mine owner not negligent in failing to furnish reasonably safe place to work to employee.* A mine owner was not negligent in failing to furnish a reasonably safe place to work for a mine bowlder breaker of a relieving shift, who was injured, upon striking a bowlder, by an explosion of dynamite remaining from shots set off by the outgoing shift, where it was the duty of the bowlder breaker to break such bowlder and also to look around for unexploded dynamite and carry it to a place of safety, and such explosion was not due to a miss-shot or missed hole but to a small unexploded portion of a charge.

4. DEATH, § 48*—*when evidence of condition of health of deceased is admissible.* In an action for negligent death, a physician who attended deceased should be permitted to answer a question as to the condition of health of the deceased, since it tended to show the physical condition of deceased and his ability to earn a livelihood.

Appeal from the Circuit Court of Hardin county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1918. Reversed with finding of facts. Opinion filed November 1, 1918.

WILLIAM S. BEDAL and JAMES A. WATSON, for appellant.

JAMES A. DENTON, H. ROBERT FOWLER and H. A. EVANS, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

An action on the case brought by appellee, administrator of the estate of John F. Smith, deceased,

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

against appellant, in the Circuit Court of Hardin county, resulted in a verdict and judgment in favor of appellee for $2,000. To reverse said judgment this appeal is prosecuted.

The record discloses that John F. Smith, appellee's intestate, was at the time of the injury which resulted in his death employed as a bowlder breaker in appellant's Fluor Spar Mine in Hardin county. There were two shifts working in the stope, the night shift going on shortly before 7:00 in the evening and leaving at 5:40 in the morning; the day shift going on shortly before 7:00 a. m., and leaving at 5:40 p. m., there being intervals of about one hour and twenty minutes between shifts.

On July 20, 1915, deceased went to work in No. 3 stope at 7 o'clock in the morning on the 200-foot level in Blue Diggins Mine. This stope was a chamber above the 200-foot level or drift, and it was from 200 to 350 feet long and reached by a bulkhead or manhole 800 to 1,000 feet from the shaft. The spar and rock shot down were dropped in the cars in the 200-foot level through bins. Bowlder breakers were employed to break up the pieces of rock and spar which were too large to go through the bins.

On entering the mine on the 20th day of July, Smith began breaking bowlders with a sledge hammer of about 12 pounds weight; he had worked but a short time when an explosion was heard by the men operating in the mine. Appellee's intestate called for assistance and two men engaged in the mine ran to his assistance and found his body filled with spar fragments and two holes of considerable size in his groin and a severe injury to his kneecap. Shortly thereafter gangrene set in and a few days later he died.

It was stipulated on the trial of said cause that appellee was the duly appointed and qualified administrator of the estate of John F. Smith, deceased, and that appellant company had elected not to be bound

by the Workmen's Compensation Act, and that it had filed its election with the Industrial Board and had given notice to its employees according to the statute.

The declaration consists of two counts. The first count is based on the alleged duty of appellant to discover miss-shots in said mine and to report the same to the ongoing shift; that there was a miss-shot and that it was the duty of appellant to have discovered the same and to have advised or warned appellee's intestate thereof, and charges a failure on the part of appellant so to do.

The second count alleges that after the night shift had fired their shot there remained a miss-shot, which constituted a dangerous condition, the language of the declaration being, "That by reason of the existence of the said missed hole thereat and the want of knowledge of the same by plaintiff's intestate, the place in said drift where plaintiff's intestate was then and there required to work, then and there became and was no longer reasonably safe for plaintiff's intestate to pursue his work in reasonable safety as the employe of said defendant; that the existence of the said missed hole was then and there known, or, by the exercise of reasonable care and skill, could have been known by the defendant; that the defendant then and there carelessly and negligently suffered this place in which plaintiff's intestate was required to work to be and to remain in said unsafe condition to the injury of plaintiff's intestate." Said declaration then alleges that plaintiff's intestate struck a large bowlder a heavy blow with a sledge hammer in order to burst the same in small fragments for the removal thereof, and that by reason thereof the dynamite in said missed hole exploded, giving to appellee's intestate a mortal wound from which he died. A plea of the general issue was filed to this declaration; a trial was had resulting in a verdict and judgment as above set forth.

It is first contended by appellant that the declara-

tion fails to state a cause of action against appellant. No demurrer was filed to this declaration and we are inclined to hold that after verdict the declaration would be sufficient.

It is next contended by appellant that the record does not disclose that it has been guilty of any negligence as charged in the declaration and that notwithstanding appellant has elected not to be governed by the Workmen's Compensation Act the burden of proving negligence on the part of appellant still remains before a recovery can be had, and that no negligence has been proved.

The declaration in both counts alleges that there was a missed shot or missed hole in the mine at the time the day shift came on. In other words, at the time deceased entered the mine to work it was the duty of appellant to have discovered this missed shot or hole and to have warned appellee's intestate of its existence. On the other hand, appellant contends that the record does not show the missed shot or missed hole as charged in the declaration, and that the most that the evidence shows is that a certain piece of dynamite remained unexploded in the bowlder, or part of the bowlder shot down, and that it was the explosion of these particles or piece of dynamite that caused the explosion in question and the injury to appellee's intestate. Appellant further contends that under the evidence in this case it was the duty of appellee's intestate as a bowlder breaker to examine the stope or room for fragments of dynamite remaining unexploded and to gather the same up and place them in a magazine provided for said purpose, and that the bowlder breaker was the only person charged with this duty.

The evidence in the record clearly supports this contention on the part of appellant, the testimony in the record being to the effect that the duties of appellee's intestate as a bowlder breaker ''were to collect powder, clean up all powder he found, take it to the mag-

azine, throw all the dirt down out of the stope and break bowlders. The purpose of breaking the bowlders is to break them so they will go through the bins. It is the bowlder breaker's duty to look about for powder or dynamite in a bowlder or any caps or anything of that kind. There is nobody else to make the inspection for him.''

The record further discloses that appellee's intestate had been engaged in the business of bowlder breaker for appellant for something like a year, and that the dynamite that might remain unexploded in holes in the bowlders can be easily detected, as the dynamite was of a different color than the spar. Counsel for appellee do not seriously controvert the proposition that it was the duty of appellee's intestate to gather up the pieces of dynamite and to make the examination as above specified, but say that his failure so to do was merely contributory negligence, and that the duty still remained with appellant to call attention of the ongoing shift to any missed holes as charged in its declaration. The only evidence of any character offered by appellant in support of its contention is that there had been a custom in this mine for the outgoing shift to count the number of shots prepared and fired by them and then to count the number of explosions, and if the number of explosions did not equal the number of shots prepared and fired they would so report to the foreman of the oncoming shift.

The record, however, discloses that frequently more than one shot would be exploded at the same time, and there was nothing certain with reference to this test. The record in this case is absolutely silent on the number of shots that were prepared and fired by the outgoing shift on the day that appellee's intestate was injured, or as to the number of the explosions that were heard. There is nothing to show that the number of explosions did not equal the number of shots placed and fired. If they did equal, no report would

196     APPELLATE COURTS OF ILLINOIS.

Hobbs v. Fairview Fluor Spar and Lead Co., 212 Ill. App. 190.

have been made. We think the evidence wholly fails to support the allegation of the first count of the declaration.

The second count is a common-law count and charges the failure of appellant to furnish appellee's intestate with a safe place to work. It is contended by appellant that the obligation of an employer to furnish his employees with a safe place to work has reference to the physical surroundings and does not have reference to the work or the contract on which the employee is working, and we think this point is well taken.

In the case of *Keefe v. Armour & Co.*, 258 Ill. 28, being a case where an employee was suing for damages on account of injuries suffered by the bursting of a tank which he was repairing as a boiler maker, the court in discussing an instruction with reference to the duty of an employer to furnish his employee with a safe place to work says: "The rule stated was correct, but it relates to the condition of premises, buildings and things which properly constitute a place for work. The rule is illustrated by various cases, such as *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447, where a servant was required to work next to a dangerous pile of ore; *Iroquois Furnace Co. v. McCrea*, 191 Ill. 340, where a part of a dump pile had been removed so as to leave a perpendicular wall, making it dangerous for a servant to walk over it in the nighttime; *Western Stone Co. v. Muscial*, 196 Ill. 382, where the servant was required to load dirt into a wheelbarrow next to a perpendicular wall which was dangerous; *Libby, McNeill & Libby v. Banks*, 209 Ill. 109, where the defendant maintained a platform which made the place for the performance of the servant's duty dangerous; and *Acme Harvester Co. v. Chittick*, 230 Ill. 558, where there was a slippery hard-maple floor upon which the servant was required to stand. The duty includes the element of locality, and has no reference to anything except the keeping of the prem-

ises physically safe (*Nordhaus v. Vandalia R. Co.*, 242 Ill. 166), and the rule could not possibly be applied to the facts of this case.''

In the case of *Peterson v. Chicago & O. P. El. R. Co.*, 260 Ill. 280, the Supreme Court at page 283, in discussing an instruction to the effect that it was the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work, says: ''As an abstract rule of law the proposition announced in the instruction is unobjectionable, but it has no application to the facts. In neither the pleading nor the evidence is there any indication that the place where the plaintiff was working was unsafe, except the fact that he was hurt there. There was no evidence that the elevated structure itself, the rails, ties, switches and surroundings, were in any respect defective or could have been made safer in view of the purpose for which they were designed. The rule requires of the master the duty only of keeping the premises physically safe and has no reference to anything else. (*Keefe v. Armour & Co.*, 258 Ill. 28; *Nordhaus v. Vandalia R. Co.*, 242 Ill. 166.) It was therefore inapplicable to this case.''

The bowlder which appellee's intestate was breaking at the time of the explosion was a part of the material on which appellee's intestate was to work, and it was his business as disclosed by the record to examine the bowlder to ascertain if there was any unexploded powder in or about the same, and if any was found to gather the same up and place it in a magazine, and it was in no sense a part of the physical surroundings of his working place as contemplated by the foregoing cases.

It should be further observed that the explosion which occurred was not an explosion from a missed hole or miss-shot, for the witnesses who testified in reference thereto stated that no rock was shot down, and no one was injured in the mine except appellee's

intestate. One witness testified on behalf of appellee's intestate that, ''It was not more than half a stick of dynamite that exploded, in his judgment,'' whereas, the evidence is to the effect that from three to six sticks of dynamite are placed in each hole where a shot is to be fired. The evidence does not sustain the declaration that it was a miss-shot or missed hole. We hold, therefore, that the record does not disclose a failure on the part of appellant to furnish appellee's intestate a reasonably safe place in which to work.

It is next contended by appellant that the court erred in refusing to allow the physician who waited on appellee's intestate to state the condition of his health. We think the court erred in refusing to allow the question to be answered, as it tended to show the physical condition of appellee's intestate and his ability to earn a livelihood for his family. In other words, it went to the damage that his next of kin had suffered. It was not offered for the purpose of defeating the cause of action and would not have been proper for that purpose.

It is next contended by appellant that the court erred in its instructions. It will not be necessary for us to discuss this assignment of error for the reason that in our judgment no right of recovery is shown in this case.

For the reasons above set forth the judgment will be reversed, and the clerk will incorporate as a part of the judgment in this case the following finding of facts: ''We find as an ultimate fact that appellant was not guilty of the negligence charged in either count of the declaration.''

*Reversed with finding of facts.*