J. W. NORDHAUS, Admr., Appellee, *vs.* THE VANDALIA
RAILROAD COMPANY, Appellant.

*Opinion filed October 26, 1909—Rehearing denied Dec. 8, 1909.*

1. PRACTICE—*ruling on demurrer is not properly included in a
bill of exceptions.* An order by the court overruling a demurrer
is a part of the record without a bill of exceptions, and it is not
proper to include it in such bill.

2. SAME—*a demurrer is waived by pleading over.* The right to
assign error upon the overruling of a demurrer to a declaration is
waived by pleading the general issue, and while the practice of
asking for leave to withdraw the demurrer and to plead is still·
followed to some extent, it is not necessary to ask leave to with-
draw the demurrer before pleading.

3. SAME—*courts of appeal only review final judgments—effect
of new trial.* If a verdict is set aside and a new trial granted the
case is in the same position as though it had never been tried, and
upon appeal from the judgment in the second trial there is noth-
ing relating to the first trial which can be reviewed.

4. EVIDENCE—*when admitting applications for money orders in
evidence is proper.* In an action for damages for the negligent
killing of a section hand, who left a mother in a foreign country,
if there is evidence that he contributed to her support considerable
amounts, which were transmitted by money orders, it is not error
to admit in evidence applications by the deceased for post-office
money orders payable to his mother in such foreign country.

5. MASTER AND SERVANT—*when an injury is not attributable to
unsafe condition of place of work.* If the place provided by the
master for his servant to work is unsafe because of the master's
failure to use reasonable care the master is liable, and he cannot
relieve himself by saying that he delegated the performance of his
duty to another servant; but if an injury to a servant occurs
through negligence which does not render the premises defective
or unsafe, such injury is not attributable to any breach of the mas-
ter's duty with respect to the servant's place of work.

6. SAME—*when rule concerning master's duty with respect to
servant's place of work does not apply.* The rule that the master
is liable for his failure to use reasonable care to furnish his ser-
vant a reasonably safe place to work does not apply to the case of
an injury to a section hand, who, while unloading a car of cin-
ders, was thrown from the car by the force of a collision occa-
sioned by the negligence of the flagman of the train to which such
car was attached in failing to go back far enough to protect the
train against such collision, there being no evidence that there

was anything defective or unsafe about the location, tracks, cars, rails or appliances.

7. SAME—*flagman of switching crew not necessarily a fellow-servant of section hand.* The flagman of a switching crew engaged temporarily in handling cars of cinders being unloaded by section men working under their own foreman cannot be said, as a matter of law, to be the fellow-servant of such section men with respect to his duty to protect the train from collisions, even though the conductor of the crew, who was the flagman's foreman, was under the directions of the section foreman in the matter of picking up and placing the cars of cinders. (*Abend* v. *T. H. & I. R. R. Co.* 111 Ill. 202, distinguished.)

8. SAME—*when a servant cannot be said to have assumed the risk.* A section man killed by being knocked from the car of cinders he was helping to unload, when the train was struck by another train, cannot be said to have assumed the risk, where there is no evidence that the event by which he lost his life was an ordinary and usual one in the service in which he was engaged, or that the danger was an open and obvious one which he apprehended or ought to have apprehended.

9. NEGLIGENCE—*a party may be liable though his negligence is not the sole cause of injury.* A railroad company whose negligence, in combination with the negligence of a stock yards company, is the cause of an injury to a section hand is liable, notwithstanding its negligence might not, of itself alone, have produced the injury.

10. ACTIONS AND DEFENSES—*when plaintiff may dismiss suit as to one wrongdoer.* Several persons acting independently but causing a single injury are liable, jointly and severally, to the injured party, who may, at his election, sue one or all, and if he sues all he may, at any time before judgment, dismiss as to either of the defendants and proceed as to the others.

11. APPEALS AND ERRORS—*party cannot complain of error which does not concern him.* A defendant against whom a judgment is recovered in an action for damages by an administrator cannot complain, on appeal, of an alleged error of the trial court in awarding an execution against the plaintiff for costs, when the suit was dismissed as to another defendant, instead of ordering such costs to be paid in due course of administration.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

S. W. FORDYCE, JR., and L. D. TURNER, for appellant.

MCHALE & SUMNER, and D. J. SULLIVAN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee, J. W. Nordhaus, as administrator of Frank Zehak, brought this suit in the circuit court of St. Clair county against the Vandalia Railroad Company, appellant, and the St. Louis National Stock Yards, to recover damages for the death of said Frank Zehak, alleged to have been caused by the negligence of the defendants. The defendants severally pleaded the general issue and upon a trial there was a verdict of guilty as to both. The court granted motions of the defendants for a new trial, and upon the second trial a verdict was again returned finding both defendants guilty and assessing the damages at $1500. The defendants again moved for a new trial, whereupon the plaintiff dismissed the suit as to the St. Louis National Stock Yards and the court entered judgment against the plaintiff, in favor of that defendant, for its costs. The court then overruled the motion of the Vandalia Railroad Company for a new trial and entered judgment against it on the verdict. The Appellate Court for the Fourth District affirmed the judgment, and from the judgment of the Appellate Court this appeal was taken.

The first proposition of counsel for appellant is, that its demurrer to the amended declaration ought to have been sustained. The Appellate Court replied to that proposition that the right to assign error on the overruling of the demurrer was waived by pleading the general issue, and counsel say that the Appellate Court was wrong because the statute provides for exceptions during the progress of any trial and the preservation thereof by a bill of exceptions and the right to assign error on the ruling excepted to, and the bill of exceptions in this case shows an exception to the

ruling in question. The decision of the court on the demurrer was a part of the record without a bill of exceptions and was not properly included in the bill. The law has always been that a demurrer is waived by pleading over. Going back to the very beginning of decisions in this State, it was so held in *Beer* v. *Phillips,* Breese, 44, *Vincent* v. *Morrison,* id. 227, *Cobb* v. *Ingalls,* id. 233, and *Peck* v. *Boggess,* 1 Scam. 281. Formerly, if the party demurring wished to plead he was required to obtain leave to withdraw his demurrer and to apply to the court for leave to plead over, (*Godfrey* v. *Buckmaster,* 1 Scam. 447,) and that practice is still followed to some extent, although it is not now required that a party should ask leave to withdraw his demurrer.

The next complaint is, that the court, on the first trial, refused to direct a verdict of not guilty as to the appellant. Courts of appeal only review final judgments, and as the first trial did not result in a judgment there is nothing relating to it to be reviewed. When the verdict was set aside and a new trial granted, the case was in the same position as though it had never been tried.

Frank Zehak left a mother, three brothers and two sisters, and appellant contends that the court erred in admitting in evidence applications by him for post-office money orders payable to his mother, in Hungary. The objection is that there was no evidence that the money orders were ever sent to the mother or received by her. There was evidence by a son living with the mother in Hungary that she received money orders from the deceased, and there was evidence that he contributed to her support considerable amounts, which were transmitted by money orders. The court did not err in the ruling.

On the second trial appellant again asked the court to direct a verdict of not guilty as to it, and the motion was denied. The evidence for the plaintiff, which for the purposes of the motion was to be taken as true, tended to

prove the following facts: Appellant owned and operated a railroad running from the city of East St. Louis northeasterly through the county of St. Clair, with railroad yards in and near East St. Louis, known as the "Willows yards." The St. Louis National Stock Yards was the owner of yards used for the live stock business, with a track connecting the same with the Willows yards and known as the "stock yards connection." The National Stock Yards had switch engines, and was accustomed to make up trains of cars loaded in its yards and deliver them, by means of its switch engines and crews, to the railroads over whose lines the cars were consigned, upon the stock yards connection in appellant's yards. On October 23, 1907, H. W. Brunkhorst, track foreman over a gang of ten or twelve section hands, of whom Frank Zehak was one, in the employ of appellant, desired to repair the track by unloading cinders for that purpose. Said foreman had two cars loaded with cinders at Rose Lake, and called upon the conductor of a switching crew of appellant to move the cars to the place where they were to be unloaded. They were drawn by the engine on the track and headed east, with the two cinder cars next the engine and five refrigerator box-cars west of them. One car was unloaded and the train was moved along for unloading the other. The cinder cars were open cars, with sides about four feet high and with drop doors in the bottom to let out the cinders. When all the cinders that would fall out by opening the door in the bottom of a car had passed out, the section men were required to shovel the remaining cinders through the opening. The train crew was under the direction of its own foreman, the conductor, and it was his duty to take proper precautions to prevent being run into by other trains or cars. The section men were under the control of Brunkhorst and had no relation with the train crew, but Brunkhorst had a right to command the services of the switch engine and control the location of the cinder cars for the purpose of unloading. The

stock yards delivery was due at about 2:30 o'clock every afternoon, but on that day it was late and did not arrive until about 4:00 o'clock. The view from the cinder cars to the west was obstructed by the refrigerator cars and box-cars stored on other tracks. The conductor sent out a flag-man to watch for the stock yards delivery and protect the train. He had been out about fifteen or twenty minutes be-fore the stock yards train arrived, but only went about two car-lengths west of the train. The stock yards delivery consisted of a train of forty-five cars, pushed by a switch engine at the west end. There was a switchman on the east end, and when that train was seven or eight car-lengths from appellant's train the flagman gave a steady signal or slow signal, which was repeated by the switchman back to the engine. The flagman afterwards gave a stop signal, but when the first signal was given the stock yards delivery was so near that it could not have been stopped, and it struck appellant's train and drove it about three car-lengths. One car had been unloaded and the other was being unloaded, and Zehak, with others, was in the car, shoveling cinders out through the opening in the bottom. Zehak was thrown by the collision through the opening and was killed. The men in the cinder car had no notice of the approach of the train, could not see it and knew nothing about it until the collision occurred.

It is not contended that Zehak was guilty of any negli-gence whatever, and the plaintiff's evidence was sufficient to show that the flagman sent out to warn the incoming train was negligent, and that the appellant, through its ser-vants, did not take reasonable precautions to prevent the stock yards train from running into the train on which the deceased was at work. It is urged, however, that the flag-man was a fellow-servant of Zehak, and that there could be no recovery for his negligence. The Appellate Court answered the argument on that subject by saying that it is the duty of a master to use reasonable care to provide a

reasonably safe place for his servant to work, and that if he attempts to perform that duty through another servant he is responsible for his negligence, and applied that rule to this case. That rule of law was not applicable to the facts. Every event includes the element of locality as well as time and attending circumstances, but an injury occurring through negligence which does not render the premises defective or unsafe is not a breach of the duty to keep the place safe. If the place provided for a servant to work becomes unsafe through a failure to use reasonable care, the master is liable and cannot relieve himself by saying that he committed the performance of his duty to another servant. But in this case there was no evidence that the place where the accident occurred was in any manner unsafe. There was no evidence tending to prove that the railroad yard was not physically safe, or that the rails or track were in any respect defective, or that the car or any appliance connected with it or any other car in the train or the engine was out of order or defective or unsafe in any particular. We do not think, however, that the court could rightfully have declared, as a matter of law, that the flagman through whose negligence the accident occurred was a fellow-servant with Zehak. The men were in different departments of appellant's service. The work of the section men was the care of the tracks in the yards and from there to Rose Lake. If there was any association in the performance of their usual duties between them and the switching crew the evidence did not show it. The argument is that they were both engaged at the time in repairing the track, but their duties were separate and distinct and they were subject to the orders of different foremen. Brunkhorst had authority over the section men and a right to direct the conductor of the switching crew. We do not regard the case as the same as *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 Ill. 202, where men were gathered together to constitute a wrecking crew, where the

immediate object of removing wreckage was a common end, to be accomplished by the united efforts of all. The evidence was not of such a nature that but one conclusion could be drawn from it.

It is further contended that Zehak assumed the risk; but there was no evidence that the event by which he lost his life was a usual and ordinary one in the service in which he engaged, or that it was an open and obvious danger which he did apprehend or ought to have apprehended.

Appellant complains of some rulings on instructions, and one complaint is that the court gave instruction No. 2 at the instance of its co-defendant, the St. Louis National Stock Yards. By that instruction the court advised the jury that the National Stock Yards Company would have the right to rely upon the servants of appellant keeping the track free and clear of obstructions, giving the National Stock Yards Company the right of way over the track, if the jury found, from the evidence, that the National Stock Yards Company, in making its deliveries, had the right of way of the track. The only objection made to the instruction is, that there was no evidence that the National Stock Yards Company had the right of way on the track for the purpose of making its deliveries. If it should be conceded that a judgment in favor of the appellee could be reversed for an error in an instruction given at the instance of one of the defendants, the tendency of which was to relieve that defendant from liability, the objection is unfounded, since there was evidence tending to prove the fact.

Complaint is made of the refusal of instructions numbered 2, 3, 5 and 6 tendered by the appellant. Instruction No. 2 directed the jury to find the appellant not guilty, although negligent in failing to take reasonable precautions to prevent its cars and trains from being run into by other trains, if the jury believed that such negligence would not, of itself alone, have produced the death of Zehak. It was sufficient to render appellant liable if its negligence, in com-

bination with other negligence, caused the death, and the instruction did not state the law. Instruction 3 told the jury that they should find the appellant not guilty unless it actually contributed to the death of Zehak, and that proposition was covered by other instructions. There was no evidence upon which to base instructions 5 and 6.

Counsel for appellant say that the giving of practically all the instructions asked by appellee was wrong if the instructions given at the request of appellant numbered 11 and 12, and numbered in the abstract 6 and 7, stated the law correctly. The instructions referred to, given at the request of appellant, required the jury to find appellant not guilty unless both defendants were guilty, and in substance required concert of action by the defendants producing the injury. They were wrong and should not have been given. The jury, under the evidence, might find one guilty and the other not guilty. Perhaps the instructions were inconsistent, but the appellant was unduly favored in instructing the jury.

The next complaint is, that the court erred in permitting appellee to dismiss the suit as to the St. Louis National Stock Yards and entering judgment against appellant. It is argued that the verdict was a unit, and that the court was bound either to enter judgment upon it as such or to set it aside as a whole. A judgment against two defendants is a unit and cannot be reversed as to one and affirmed as to the other. (*Hays* v. *Thomas,* Breese, 180; *Seymour* v. *Richardson Fueling Co.* 205 Ill. 77; *West Chicago Street Railroad Co.* v. *Morrison,* 160 id. 288.) But while the action was joint the liability was joint and several. Several persons acting independently but causing together a single injury may be sued either jointly or severally, and the injured party may, at his election, sue any of them separately or he may sue all or any number of them jointly. If he sues all, he may, at any time before judgment, dismiss as to either or any of the defendants and proceed as

to the others. *Callaghan* v. *Myers,* 89 Ill. 566; *Postal Telegraph-Cable Co.* v. *Likes,* 225 id. 249.

Finally, appellant complains that the court, in rendering judgment against the appellee for costs of the National Stock Yards, ordered an execution against appellee. If it was error to order an execution instead of requiring the costs to be paid in due course of administration the error did not concern appellant.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*