RICHARD PETERSON, Defendant in Error, *vs.* THE CHICAGO AND OAK PARK ELEVATED RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 4, 1913.*

1. MASTER AND SERVANT—*rule concerning safe place to work is limited to keeping the premises physically safe.* The rule requiring the master to use reasonable care to furnish his servant a reasonably safe place in which to work has reference only to the master's duty to keep the premises physically safe, and to nothing else.

2. SAME—*when giving instruction as to safe place to work is prejudicial.* Giving an instruction stating the correct rule that it is the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work is prejudicial to the defendant in an action by a servant for injuries, where the instruction is inapplicable to the facts and brings to the attention of the jury a ground of recovery not alleged in the declaration and having no existence in fact.

3. SAME—*fellow-servants—when a previous relation and acquaintance are not material.* Where there is direct co-operation between servants of the same master in a particular work the relation of fellow-servants exists without regard to the questions of their previous relation or acquaintance or the length of time they have worked together.

4. SAME—*when the relation of fellow-servants exists.* Where a switch repairer on an elevated railroad is assisting a motorman in the employ of the same master to move a car by holding an insulated wire against the car and the third rail, so as to supply electric power while the motorman operates the controller and reverses the motor, there is direct co-operation in the particular work and the men are fellow-servants as to such transaction.

5. INSTRUCTIONS—*defendant entitled to an instruction calling jury's attention to the exact issue.* The defendant in an action for damages for personal injuries is entitled to have an instruction given which calls the jury's attention to the exact issue in the case under the pleadings and the evidence.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

CHARLES LEROY BROWN, for plaintiff in error.

C. HELMER JOHNSON, and DANIEL BELASCO, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Richard Peterson recovered a judgment for $10,000 against the Chicago and Oak Park Elevated Railroad Company for personal injuries, which judgment the Appellate Court affirmed, and the record has been brought here by *certiorari* for review.

The railroad company operated a double-track electric elevated railroad running east and west in Lake street, across the Chicago river, in the city of Chicago, the electrical power being supplied through a third rail. In Market street, the first street east of the river, was a single track branch extending from Lake street south to Madison street, on which was operated a single passenger car, called a "shuttle car," which made trips from Madison street north on Market street to Lake street, then west on Lake street to Canal street, the first street west of the river, and back again to Madison street on the same track. On Lake street it used, both ways, the south railroad track, which was the track used by all west-bound trains. A towerman operated the switches from a tower at Lake and Market streets. The plaintiff below was twenty-one years old at the time of the accident and had worked for the defendant about eleven months,—five months at track repairing and six months on interlocking work,—all of the time on the elevated structure, and he was thoroughly acquainted with the tracks and switches at Lake and Market streets and the manner of running the trains and doing the work. The shuttle car coming north on Market street was turning west into Lake street when O'Neal, the bridgeman, ordered it to stop and back up into Market street to let a west-bound

train, which was coming from the east, pass it and avoid the delay of waiting until the shuttle car had crossed the river to Canal street and come back. The motorman stopped the shuttle car, reversed the motor and moved the controller a notch or two to back the car off the Lake street track, but the car would not move because it had stopped in the "dead space,"—that is, a space of about thirty-three feet and six inches where there was no third rail. The distance between the shoes of the motors at either end of the car was thirty-two feet, so that there was a space of a few inches between the shoe and the rail which prevented the supply of electricity to the car. When the motorman told O'Neal that he could not move because he was upon the dead space, O'Neal took a "light hose," which is an insulated wire five or six feet long, and inserted one end in a socket provided for that purpose in the east end of the car, with the intention of applying the other end to the third rail and thus getting electrical power into the car. Peterson was at work there repairing switches, and it was his duty, whenever called on by the towerman, or O'Neal, the bridgeman, to drop whatever he was engaged in and do whatever he was directed to do. After the light hose was attached to the car by O'Neal, Peterson took it and applied the free end to the third rail. The car moved back on the curve from Lake street into Market street, and as Peterson stood on the south side of the track, which was the inside of the curve, the body of the car, overhanging the ties outside the track, pushed him off the elevated structure to the street below.

There is a dispute in the testimony as to the circumstances under which this connection was made. Spellman, the motorman, testified that when he attempted to back, in obedience to O'Neal's order, he left the controller turned on a notch or two. Peterson testified that O'Neal told him to hold the light hose on the third rail, pointing out where

he should hold it. O'Neal crossed the track and Peterson held the light hose on the rail and heard O'Neal call "Back up," and that the car then started and pushed him off. The theory of the plaintiff in error, which the testimony of its witnesses tends to support, is, that O'Neal left Peterson at the east end of the car and started west to speak to the motorman and arrange with him to move the car, and that Peterson, without any direction to do so, applied the end of the light hose to the third rail.

The declaration consisted of two counts. The first alleged that the plaintiff in error negligently drove, managed and operated a certain car so that said car struck the defendant in error and threw him from the elevated structure to the ground. The second alleged that the plaintiff in error directed the defendant in error, upon a certain place on the structure, to work at and near a certain car, and the plaintiff in error negligently ordered and directed a certain car to be moved towards, against and upon said defendant in error while defendant in error, in the discharge of his duties as a servant of the plaintiff in error, was at or near the tracks upon which said car was moved.

Complaint is made that the court gave to the jury the following instruction:

"It is the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work."

As an abstract rule of law the proposition announced in the instruction is unobjectionable, but it has no application to the facts. In neither the pleading nor the evidence is there any indication that the place where the plaintiff was working was unsafe, except the fact that he was hurt there. There was no evidence that the elevated structure itself, the rails, ties, switches and surroundings, were in any respect defective or could have been made safer in view of the purpose for which they were designed. The rule re-

quires of the master the duty only of keeping the premises physically safe and has no reference to anything else. (*Keefe* v. *Armour & Co.* 258 Ill. 28; *Nordhaus* v. *Vandalia Railroad Co.* 242 id. 166.) It was therefore inapplicable to this case. It was prejudicial to the defendant, for it introduced to the consideration of the jury a ground of recovery which was not alleged in the declaration and had no existence in fact. It is true that the court instructed the jury that the plaintiff could recover only for the particular acts of negligence charged in the declaration, but it would be natural for the jury to inquire why they should be instructed as to the duty to furnish a safe place to work if it had nothing to do with the case. It was stated by counsel, in argument, that the failure to furnish a safe place to work was a ground of liability and was proved, and it is argued here that the instruction was based upon the evidence and applicable to the issues. If this is the view taken by counsel, it can hardly be said that the jury were not likely to be similarly misled by the instruction.

The plaintiff in error asked the following instruction, which the court refused:

"The court instructs the jury, as a matter of law, that the motorman, Spellman, and the plaintiff, Peterson, were fellow-servants."

Peterson and Spellman were both engaged in moving the car and the efforts of both were required for that purpose. To move the car back it was necessary to make a connection with the third rail, and Peterson was engaged in making that connection. It was also necessary to turn on the controller and reverse the motor, and it was Spellman's duty to perform these acts. The two men were thus co-operating in the particular business, and were thus brought within that branch of the fellow-servant rule established by the decisions of this court which declares that the relation of fellow-servants exists between servants of the same master directly co-operating with each other in a

particular work when an injury is received. (*Thompson* v. *Northern Hotel Co.* 256 Ill. 77; *Bennett* v. *Chicago City Railway Co.* 243 id. 420.) When there is such direct co-operation among servants the relation of fellow-servants exists, and the previous relation and acquaintance of the servants, the length of time they have worked together and the nature of their previous employment are immaterial. (*Chicago City Railway Co.* v. *Leach,* 208 Ill. 198; *World's Columbian Exposition* v. *Lehigh,* 196 id. 612; *Pagels* v. *Meyer,* 193 id. 172; *Gall* v. *Beckstein,* 173 id. 187.) On the undisputed facts the two men were fellow-servants and the instruction should have been given. The instruction did not direct a verdict, and affected the issue only so far as the negligence of Spellman was concerned. The question of the supposed negligent order of O'Neal was not affected.

The court refused to instruct the jury, at the defendant's request, that the fact that the court submitted the case to the jury ought not to be considered as an intimation by the court that the defendant was or was not liable. The instruction ought to have been given.

The defendant asked instructions to be given that the plaintiff could not recover on account of O'Neal's original order to back up, but only on account of an order claimed to have been given after the light hose had been attached to the car. Such instructions would have called the jury's attention particularly to the exact issue and should have been given.

The judgments of the Appellate Court and the superior court are reversed and the cause remanded for a new trial.

*Reversed and remanded.*