---

(No. 14419.—Reversed and remanded.)
JOSEPH WOODS, Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed December 19, 1922—Rehearing denied Feb. 7, 1923.*

1. NEGLIGENCE—*instruction should not assume evidence of a fact not proved.* It is the function of the court, by instructions, to state conditions of fact which the evidence fairly tends to prove and advise the jurors what rule of law shall be applied in reaching a verdict, but it is serious error to give an instruction assuming that there is evidence of a fact when there is none.

2. SAME—*when instruction as to application of Safety Appliance act is not proper.* In an action for damages under the Federal Employers' Liability act, where it is not disputed that the injury was caused by the breaking of a coupler in starting a train after the cars had coupled automatically by impact, it is serious error to give an instruction stating the provisions of the Safety Appliance act requiring the use of couplers coupling automatically by impact and directing the jury to find for the plaintiff if they find that the coupler failed to couple automatically by impact and that such failure was the proximate cause of the injury.

3. SAME—*question of negligence is for the jury under Federal Employers' Liability act.* The Federal Employers' Liability act has superseded the laws of the State as to the relation between common carriers and their employees engaged in interstate commerce, but it erects no standard of what shall constitute negligence, that question being left to the jury under the law of the particular jurisdiction.

STONE, J., dissenting.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding.

J. A. Connell, and Russell B. James, (Bruce Scott, of counsel,) for appellant.

Finn & Miller, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

The appellee, Joseph Woods, recovered a judgment for $16,700 in an action on the case in the superior court of Cook county against the appellant, the Chicago, Burlington and Quincy Railroad Company, brought to recover damages for injuries alleged to have been received while working as a switchman for appellant at its Morton Park yards, near Chicago, on the night of December 10, 1917. The Appellate Court for the First District affirmed the judgment and granted a certificate of importance and an appeal to this court.

The original declaration contained five counts in substance the same, all based on the Federal Employers' Liability act, which makes every common carrier engaged in interstate commerce liable in damages for injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, tracks, road-bed, works, boats, wharves or other equipment. The negligence alleged in each count was in permitting a coupling on one of the cars in use to be and remain in a dangerous and defective condition, old, rusty, worn out, weak and insufficient, so that it was liable at all times to break and give way and injure persons working at and about the car. It was averred that by reason of such negligence the coupling broke and gave way and a large and heavy metal part fell from it and flew upon and against the plaintiff, injuring him. The fourth count also included an averment of the

existence of the Safety Appliance act.  To the declaration
a plea of the general issue was filed, and afterward, by
leave, an additional count was filed, to which the plea of
the general issue before filed was ordered to stand as a
plea.  The additional count set out the Safety Appliance
act, which declares it to be unlawful for a common carrier
to haul or permit to be hauled or used on its line any car
used in moving interstate traffic not equipped with coup-
lers coupling automatically by impact and which can be un-
coupled without the necessity of men going between the cars.
It was charged that the defendant, in violation of that stat-
ute, failed to equip one of its cars with couplers coupling
automatically by impact, but, on the contrary, allowed a
certain coupler on one of its cars to be and remain in a
dangerous, weak, old, worn, rusty, defective and insufficient
condition, and by reason of the violation of the statute the
coupling and jaws and metal parts broke and gave way.
There were the same averments as to the part of the coup-
ling being thrown against the plaintiff, causing his injury.

The evidence for the plaintiff was to the following ef-
fect:  He was working as a switchman in the yards of
the defendant near Morton Park on December 10, 1917.
The switching crew consisted of engineer Korta, fireman
LeBrun, foreman Miller, switchman Stewart, and the plain-
tiff.  The tracks run east and west and are numbered from
the south to the north.  At about seven o'clock in the even-
ing the engine to which the crew belonged backed in on
track number 3 at the east end to couple up a string of
nineteen or twenty cars standing on that track, for the pur-
pose of making up a train.  The switchmen got off from
the engine between tracks 2 and 3, and the plaintiff re-
mained near the engine while Miller and Stewart went back
along the string of cars to see to couplings farther back.
The plaintiff coupled the engine to the first car and walked
back two or three cars, where he found two cars standing
still about five or six feet apart.  He went in between the

two cars and opened the knuckles of the coupling, pulled the draw-bars open so they would line up to make the coupling, and then stepped out from between the cars, and, standing between tracks 2 and 3, gave the engineer a come-back signal. The engineer backed up, and the plaintiff testified that he saw the two cars coupled up and that the coupling was made very easily. Miller and Stewart, who had gone on along the string of cars, opened up the knuckles of various couplings and signaled for the engineer to back up to couple the cars. Their signals were repeated to the engineer by the plaintiff, and the engineer backed up and the cars were coupled in that way, everything working all right. When the entire train was coupled up the switchmen at the rear end gave a go-ahead signal, the plaintiff repeated it to the engineer and the train started. After the train started up slowly a piece of what the witnesses called the draw-bar of the coupling, or the guard-arm, broke off and flew out a distance of six feet, striking the plaintiff on the back and knocking him down, causing the injury for which he brought suit. The plaintiff testified that when he made the coupling he observed that the couplings were worn from use, and the one that subsequently broke was worn more than the other. There was evidence for the plaintiff tending to prove that the draw-bar or guard-arm broke on account of some defect in it or on account of its worn condition, and there was evidence for the defendant to the contrary.

The court gave at the instance of the plaintiff instruction No. 11, as follows:

"The court instructs the jury that at the time of the accident in question there was in force a certain United States statute, which is as follows: 'Sec. 2.—On and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without

the necessity of men going between the ends of the cars.' And you are further instructed that this is a duty imposed by law upon every railroad company engaged in interstate traffic, and if you find from the preponderance of the evidence in this case that the defendant railroad company was engaged in interstate traffic, and that the coupling in question failed to couple automatically by impact, as alleged in the additional count of plaintiff's declaration, and that as a proximate result of such failure, if any, of the coupler in question, to couple automatically by impact, was the proximate result of the injury to the plaintiff, then you should find the defendant guilty."

Jurors have a right to, and do, look to the court to inform them as to what rules of law are applicable to the facts as found by them from the evidence which they have heard. It is the function of the court to state conditions of fact which the evidence fairly tends to prove and advise the jurors what rule of law shall be applied in reaching a verdict. It is serious error to lead them astray by giving an instruction assuming that there is evidence of a fact when there is none tending to prove such fact. (*Oxley v. Storer,* 54 Ill. 159; *United States Rolling Stock Co. v. Wilder,* 116 id. 100; *Chicago and Alton Railroad Co. v. Bragonier,* 119 id. 51; *Montag v. People,* 141 id. 75; *Lyons v. Ryerson & Son,* 242 id. 409.) It will be noted that as a statement of a rule of law applicable to a supposed state of fact the instruction was lacking in sense. It directed the jury to find the defendant guilty if they should find that as a proximate result of the failure to equip the cars with the proper coupling was the proximate result of the injury to the plaintiff. The instruction informed the jury that there was in force the United States statute requiring common carriers engaged in interstate commerce to equip their cars with couplers coupling automatically by impact, which was true. By the Safety Appliance act a qualified duty of the common law was enlarged into an absolute duty

with respect to car couplers, and a violation of the statute renders a carrier liable to make compensation for injuries because of such violation, but the statute had no relation whatever to the case, because the undisputed evidence was that the cars did couple automatically by impact. The plaintiff testified that he gave the engineer a signal for the cars to come back; that the engineer backed up and the cars coupled, and he saw them couple up and the coupling was made very easily. The instruction authorizing the jury to find from the evidence that there was a violation of the statute was not only directly contrary to the testimony of the plaintiff but even to the present attitude of his counsel concerning the evidence, who begin their argument of the case with this statement: "The undisputed facts shown by the record are as follows: The coupling in question coupled up in the ordinary way. As the strain was applied to the load the train started, and after it did start the coupling broke and the jaw of the coupler was thrown to the side of it, at least to the point where it was found." The instruction directed a verdict, was on a vital question in the case, and no more serious or harmful error could be committed than to give to the jury an imaginary state of facts as a guide to the verdict directed.

The decision in *Minneapolis and St. Louis Railroad Co.* v. *Gotschall,* 244 U. S. 66, gives no support to the argument for the appellee that although the evidence was that the couplers coupled automatically by impact, yet the jury might find that they did not because the coupler afterward broke. In that case Gotschall was head brakeman on an extra freight train running from Albert Lea, Minnesota, to Minneapolis, transporting interstate merchandise. As the train left Jordan, an intermediate station, Gotschall boarded a car toward the rear end and was going along the tops of the cars towards the locomotive when the train separated because of an opening of the coupler on one of the cars.

In that case the jury were not directed to render a verdict but under an instruction were permitted to infer negligence from the fact that the coupler failed to perform its function, there being no other proof of negligence. The coupling did not break but uncoupled, which the court held showed that it was not such a coupler as was required by the statute and failed to perform its function. That case, as well as *Louisville and Nashville Railroad Co.* v. *Layton,* 243 U. S. 617, also answers the argument of appellant that liability to a switchman is limited to injuries occasioned to one who is coupling cars.

If there was any liability shown by the evidence it was under the Federal Employers' Liability act, upon which the five counts of the original declaration were framed. That act has superseded the laws of the State as to the relation between common carriers and their employees engaged in interstate commerce. It fixes liability for negligence and has eliminated some defenses recognized by State laws, but it erects no standard of what shall constitute negligence. That is to be determined by the law of the jurisdiction, and if negligence is proved the statute is to be applied. If the jury, in trying to understand this instruction, could apply it to any evidence whatever creating a cause of action under the Federal Employers' Liability act it was contrary to the law in directing a verdict, since the question of what constitutes negligence is for the jury and not for the court.

The judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.                          *Reversed and remanded.*

Mr. JUSTICE STONE, dissenting.