**GRISWOLD v. GARDNER.**

No. 8936.

Circuit Court of Appeals, Seventh Circuit.

May 15, 1946.

LINDLEY, District Judge, dissenting; and KERNER, Circuit Judge, dissenting in part.

Attorneys for Henry A. Gardner, as Trustee of the railroads and properties of The Alton Railroad Company.

Douglas C. Moir and Edward J. Wendrow, both of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellant.

Royal W. Irwin, of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff in an action to recover damages under the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq., occasioned by the death of plaintiff's decedent resulting from the alleged negligence of defendant during a switching operation in defendant's yard at Bloomington, Illinois. The errors relied on are (1) the court's refusal to direct a verdict in favor of defendant and (2) the giving of two instructions for plaintiff.

Any detailed review of the evidence in a case of this character for the purpose of determining the propriety of the trial court's refusal to direct a verdict would be an idle and useless ceremony in the light of

the recent decisions of the Supreme Court. This is so regardless of what we might think of the sufficiency of the evidence in this respect. The fact is, so we think, that the Supreme Court has in effect converted this negligence statute into a compensation law thereby making, for all practical purposes, a railroad an insurer of its employees. (See dissent of Mr. Justice Roberts in Bailey v. Central Vermont Ry., 319 U.S. 350, 358, 63 S.Ct. 1062, 1066, 87 L.Ed. 1444.)

The Supreme Court, commencing with Tiller v. Atlantic Coastline R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, in a succession of cases has reversed every court (with one exception hereinafter noted) which has held that a defendant was entitled to a directed verdict. In the Tiller case, the Supreme Court reversed the Court of Appeals for the Fourth Circuit, 128 F.2d 420, which had affirmed the District Court in directing a verdict. The case, upon remand, was again tried in the court below, where a directed verdict was denied. For this denial the Court of Appeals reversed and again the Supreme Court reversed the Court of Appeals, holding that the District Court properly submitted the case to the jury. In Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S. Ct. 409, 88 L.Ed. 520, this court reversed the District Court on account of its refusal to direct a verdict, and our decision, 134 F. 2d 860, was reversed by the Supreme Court. In Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, the Supreme Court of Vermont held that there should have been a directed verdict for the defendant, and the Supreme Court reversed the decision of that court. In Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490, the Supreme Court reversed the Supreme Court of Pennsylvania which had held that there should have been a directed verdict. In the recent case of Lavender, Administrator, etc., v. Kurn et al., 66 S.Ct. 740, the Supreme Court reversed the Supreme Court of Missouri which had held that there should have been a directed verdict for each of the defendants.

The only exception to this unbroken line of decisions is Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, where the Supreme Court of North Carolina was affirmed in its holding that there should have been a directed verdict. This exception, however, is of little consequence in view of the fact that four members of the court dissented.

The case of Lavender v. Kurn, supra, the latest decision of the Supreme Court under the Federal Employers Liability Act, leaves little room for doubt but that a directed verdict by a trial court or a holding by any court sustaining a directed verdict will not meet with favor, even though the verdict involves speculation and conjecture. In the Lavender case, the Missouri Supreme Court, 189 S.W.2d 253, 259, held: "* * * that it would be mere speculation and conjecture to say that Haney was struck by the mail hook, and we are constrained to rule that plaintiff failed to make a submissible case on that question." In response to this holding the Supreme Court states [66 S.Ct. 744]: "It is no answer to say that the jury's verdict involves speculation and conjecture." A reading of the facts of that case, both as related by the Supreme Court and the Supreme Court of Missouri, reveals very clearly that the jury's verdict as to the cause of decedent's death, especially as it applies to the Illinois Central Railroad, amounted to nothing more than a guess on its part.

That the Supreme Court treats the question of negligence and proximate cause as a jury question in this class of cases is clearly shown by a study of these cases. Moreover, not only are these issues to be decided by the jury but its decision is unassailable. In fact, it is difficult to conceive of a case brought under this Act where a trial court would be justified in directing a verdict.

Plaintiff's deceased, Loyal S. Griswold, was head brakeman on defendant's train which operated between Bloomington, Illinois and Kansas City, Missouri. He was killed at about 3:40 A. M. January 25, 1943, in defendant's yard at Bloomington. This yard consists of a series of 15 tracks, numbered from 1 to 15, from the west to east and running north and south. Griswold's train, No. 93, consisting of about 57 cars,

was standing on track 7 headed south. It had been made up preparatory to leaving the yard. A number of other trains were engaged in switching operations in the yard. Shortly before the fatal occurrence Griswold was on the engine of his train and talked to the engineer and fireman who were in their usual places. He got down from the engine and this was the last seen of him while alive.

Shortly after Griswold got off the engine of his train, a cut of 17 freight cars was shoved in a northerly direction on track 6 past the Griswold train. Although two switchmen had ridden with lanterns on the north end of these cars as they proceeded north on track 6 approaching Griswold's train, they got off before they reached the locomotive of the latter train. So no person was riding on the front car of this cut of cars being shoved north on track 6 at the time it approached and passed the engine on Griswold's train. There is evidence that the night was dark and that no warning of any kind was given concerning the movement of this cut of cars. Neither the engineer nor the fireman on Griswold's train was aware of the approach of the cut of cars on track 6 until they were opposite the engine of their train. As the cars went by, the engineer heard a sound as though the cars had run over something. He inquired of the fireman concerning the whereabouts of Griswold.

Griswold's unlighted lantern was found on the west side of track 6 (between tracks 5 and 6) about opposite the tank of the engine of his train, and his body was found across the west rail of track 6, some six or seven car lengths north of his engine. The distance between the nearest rail of track 6 and that of track 7 was approximately eight feet six inches. The clearance or unoccupied space between cars moving on these tracks was approximately four feet six inches.

■ Defendant argues that there is no proof of negligence and even so, no proof that such negligence was the proximate cause of decedent's death. In view of the decisions of the Supreme Court, we think both contentions must be denied. Whether the pushing of the string of cars which caused decedent's death in the manner related amounted to negligence was for the jury. True, there is no proof as to how or why the deceased happened to be located in a place where he would be run over by these moving cars. Neither was there any such proof in the Tennant case, supra. There as here, the decedent when last seen alive was at a place where he had a right to be. Also there as here, there was no proof as to the reason or the occasion for the deceased being in a position where he might be killed by a movement of the train. In the Tennant case the Supreme Court held that the jury might infer that his death was the result of the defendant's negligence, and we think the same thing must be held in the instant case.

Defendant argues that the judgment should be reversed because of two instructions. They are: (1) "It was the duty of the employer of the deceased in this case to have used ordinary care and prudence in furnishing to the deceased, at the time of the accident in question, a reasonably safe place in which to work and to have used all reasonable precautions to maintain and keep such place in a reasonably safe condition," and (2) "The employee has a right to assume that his employer has exercised ordinary care with respect to providing him with a reasonably safe place of work."

It is not claimed in this court but that these instructions state correct principles of law. It is contended, however, that they should not have been given because (1) there was no evidence in the case to which the instructions could be applicable, and (2) the complaint did not charge the breach of a duty to furnish a reasonably safe place in which to work. The first reason is predicated upon the theory that the rule requiring a master to furnish a servant with a reasonably safe place to work has reference only to the physical condition of the place itself, and not to the negligent acts of fellow employees. Cases are cited which have so held, including a number from Illinois. Typical of the latter is Peterson v. Chicago & Oak Park Elevated R. Co., 260 Ill. 280, 283, 103 N.E. 252, 253, wherein the court stated: "The rule requires of the master the duty only of keep-

ing the premises physically safe and has no reference to anything else."

■ Defendant argues as though we are bound by the Illinois rule. We think that such is not the case. In Bailey v. Central Vt. Ry., supra, the suit was under the Federal Employers Liability Act and the negligence charged was failure to furnish a reasonably safe place to work. The court on page 352 of 319 U.S., on page 1063 of 63 S.Ct., 87 L.Ed. 1444, stated: "The rights which the Act creates are federal rights protected by federal rather than local rules of law." So we think we need give no further consideration to the authorities cited by both defendant and plaintiff as to what constitutes a reasonably safe place to work as defined by state authorities.

Furthermore, it is questionable, especially as to instruction 1, whether any question was raised except that such negligence had not been alleged in the complaint. In a colloquy between counsel and the court, counsel for defendant specifically objected on such ground. The court suggested that under the rules the complaint could be amended to correspond with the proof. The court stated: "Suppose they operated a train down there in an unsafe manner. Isn't that failure to furnish a safe place to work, so far as the employee is concerned?" Counsel for defendant responded, "That may be. That may be."

■ As to the second instruction, it is true that counsel for defendant stated, "I don't think that is the law, I don't think he has the right to assume anything of the kind." It may be true, as shown, that under the local rule neither of these instructions was applicable to the facts of this case; however, we are of the view that under the decision of the Bailey case, supra, they were applicable. In that case the court on page 353 of 319 U.S., on page 1064 of 63 S.Ct., 87 L.Ed. 1444, stated:

"The nature of the task which Bailey undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guard rail, the height of the bridge above the ground, the fact that the car could have been opened or unloaded near the bridge on level ground—all these were facts and circumstances for the jury to weigh and appraise in determining whether respondent in furnishing Bailey with that particular place in which to perform the task was negligent."

While the facts in that case were different than those of the instant case, the point is that no physical defect was shown in the premises where the plaintiff was employed at the time he sustained his injury. Following the statement last quoted, the court proceeds:

"The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue * * *."

We think this pronouncement is pertinent to the instant situation.

■ The most serious criticism of these instructions, in our judgment, is that the negligence referred to was not alleged in the complaint. If we are correct, however, in our view that the instructions were applicable to the evidence, plaintiff could, as pointed out by the court in its colloquy with counsel, have amended her complaint to correspond with her proof. True, defendant's counsel in this colloquy stated that an amendment by plaintiff would be unfair, and it is argued in this court that defendant was not prepared to meet the issue thus presented. Just how he has been harmed, however, is not disclosed. Certainly, for the reason we have stated, a citation to the lower court of the authorities which he has cited to this court as to the local rule on what constitutes an unsafe place to work would have been unavailing. No complaint is made that defendant would have been able to offer any different testimony if such negligence had been alleged in the complaint. In fact, it is not reasonable to think that either of the parties would have offered any additional testimony as to the circumstances concerning the manner in which the decedent was killed. Moreover, if defendant had any such testimony he could have requested

leave to introduce the same when it became known that the court would give the instructions complained of.

We therefore are of the view that the instructions stated correct propositions of law, that they were applicable to the circumstances of the case as proven, and that the giving of them was not reversible error, even though the complaint failed to allege such negligence. See Swift & Co. v. Young, 4 Cir., 107 F.2d 170, 172.

The judgment is affirmed.

KERNER, Circuit Judge.

I concur in the result reached and the legal propositions announced. I do not agree, however, that the Supreme Court has converted the Federal Employers' Liability Act into a compensation law and has made a railroad an insurer of its employees.

LINDLEY, District Judge (dissenting).

In Paragraph 8 of the complaint plaintiff averred that defendant had been guilty of one or more of the following acts of negligence which directly caused injury to plaintiff's intestate; that it negligently, (a), caused certain cars to run into deceased; (b), failed to give sufficient notice and warning of the approach of the cars; (c), and caused the cars to be propelled without lights or signal or without a man riding on the head end while plaintiff's intestate was in the performance of his duties on or near the track. Plaintiff did not charge that defendant had violated its duty to furnish the deceased employee a reasonably safe place in which to work.

As the majority opinion points out, defendant objected to consideration of the latter issue and to instruction by the court in that respect. The trial court, being of the opinion that operation of trains in an unsafe manner constitutes failure to furnish a safe place in which to work, suggested to plaintiff that the complaint might be amended. But plaintiff relied upon the sufficiency of the complaint and proceeded to argue at length to the jury that defendant had been proved guilty of failure to furnish a safe place in which to work. Furthermore the court charged the jury

that it was the duty of the employer to use ordinary care and prudence in furnishing deceased a reasonably safe place in which to work. It is perfectly obvious, therefore, that one of the important issues submitted to the jury and probably the most important, was whether defendant had negligently failed to furnish a reasonably safe place to work.

I do not understand that this issue was ever properly in this case. The complaint did not charge such negligence, and, though the court did instruct the jury that such was defendant's duty, yet, there is no evidence in this record to sustain an affirmative finding, even if the issue were presented by the pleadings. In Nordhaus v. Vandalia R. Co., 242 Ill. 166, 89 N.E. 974, 977, where there was an injury to a flagman, the court said: "An injury occurring through negligence which does not render the premises defective or unsafe is not a breach of the duty to keep the place safe. * * * There was no evidence tending to prove that the railroad yard was not physically safe, or that the rails or track were in any respect defective, or that the car or any appliance connected with it or any other car in the train or the engine was out of order or defective or unsafe in any particular." In Peterson v. Chicago & Oak Park El. R. Co., 260 Ill. 280, at page 283, 103 N.E. 252, at page 253, an employee was injured in the course of operation of an elevated railroad. The court said: "Complaint is made that the court gave to the jury the following instruction: 'It is the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work.' As an abstract rule of law the proposition announced in the instruction is unobjectionable, but it has no application to the facts. In neither the pleading nor the evidence is there any indication that the place where the plaintiff was working was unsafe, except the fact that he was hurt there. * * * The rule requires of the master the duty only of keeping the premises physically safe and has no reference to anything else. * * * It was stated by counsel, in argument, that the failure to furnish a safe place to work was a ground of liability and was proved, and

it is argued here that the instruction was based upon the evidence and applicable to the issues. If this is the view taken by counsel, it can hardly be said that the jury were not likely to be similarly misled by the instruction." The language of this opinion is directly applicable to the case at bar.

In Keefe v. Armour & Co., 258 Ill. 28, at page 34, 101 N.E. 252, at page 254, Ann. Cas.1914B, 188, the court said: "The charges of the declaration * * * did not include any charge respecting a safe place to work or any breach of duty in that regard; and there was no evidence to sustain such a charge, if it had been made. The court gave to the jury, at the request of the plaintiff the following instruction: 'The court instructs the jury that it is the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place to work. * * *' The rule stated was correct; but it relates to the condition of premises, buildings, and things which properly constitute a place for work. The rule is illustrated by various cases. * * * The jury might very well have applied to the case the instruction concerning a reasonably safe place to work and considered that there was a breach of that duty; and the verdict is as readily referable to that instruction as to any other statement of the law made by the court." In Fisher v. Chicago, R. I. & P. R. Co., 290 Ill. 49, 124 N.E. 831, one count alleged that defendant failed to furnish plaintiff a reasonably safe place to work. In consequence thereof the deceased was injured and killed. The court found that there was no evidence to support this count. After discussing Keefe v. Armour & Co., 258 Ill. 28, 101 N.E. 252, Ann.Cas.1914B, 188, and Peterson v. Chicago & Oak Park Elevated Railroad Co., 260 Ill. 280, 103 N.E. 252, it said, "There was no evidence that the elevated structure itself, the rails, ties, switches, and surroundings, were in any respect defective or could have been made safer in view of the purposes for which they were designed. The rules require of the master the duty only of keeping the premises physically safe and have no reference to anything else. Here there was no evidence of any defect in the premises. There was nothing unsafe in the place nor any negligence in regard to it." [290 Ill. 49, 124 N.E. 834.] See also Delaware, L. & W. R. Co. v. Koske, 279 U.S. 7, 10, 49 S.Ct. 202, 73 L.Ed. 578; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 S.Ct. 275, 45 L.Ed. 361; Washington & G. R. Co. v. McDade, 135 U.S. 554, 570, 10 S.Ct. 1044, 34 L.Ed. 235; Hunsaker's Adm'x v. Chesapeake & Ohio R. Co., 185 Ky. 686, 215 S.W. 552, 28 A.L. R. 117; Peterson v. Chicago, R. I. & P. R. Co., 149 Iowa 496, 128 N.W. 932, 46 L.R.A.,N.S., 766.

I think the evidence here reflects no proof of an unreasonably unsafe place to work. It seems to me that defendant has never had a trial upon the true issue, namely that alleged in plaintiff's declaration of negligent operation of cars and failure to keep look-out or give a warning. Indeed, the trial proceeded upon a false issue unsupported by any evidence. I would reverse the judgment for a new trial.

I might add that a question occurs to me in this connection upon which, perhaps, we ought to rule. It has been repeatedly asserted by the Supreme Court that all questions involved in employers' liability cases are to be determined by a federal rule established by the federal courts. This is clearly true as to strictly federal questions, such as what constitutes interstate commerce; but since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, can the federal courts establish a yardstick of their own, without respect to the substantive law of the state, as to what constitutes negligence? Congress did not attempt to define negligence; it created no standard, no yardstick of any character. If we follow Erie R. Co. v. Tompkins, to its ultimate logical result, are we not bound in defining negligence to give heed to the substantive law of Illinois? It is because of this question that I have accentuated the Illinois authorities bearing upon the duty to furnish a safe place in which to work. It seems to me the Supreme Court of Illinois correctly answered this question when it said, in Woods v. Chicago, B. & Q. R. Co., 306 Ill. 217, at page 223, 137 N.E. 806, at page 808: "If there was any liability

shown by the evidence, it was under the federal Employers' Liability Act, upon which the five counts of the original declaration were framed. That act has superseded the laws of the state as to the relation between common carriers and their employees engaged in interstate commerce. It fixes liability for negligence and has eliminated some defenses recognized by state laws, but it erects no standard of what shall constitute negligence. That is to be determined by the law of the jurisdiction, and if negligence is proved the statute is to be applied."