## TRUST CO. OF CHICAGO v. ERIE R. CO.
### No. 9453.

Circuit Court of Appeals, Seventh Circuit.
Feb. 6, 1948.

Joseph P. Power and Charles T. Shanner, both of Chicago, Ill., for appellant.

Clyde E. Shorey, John E. Gavin, and Elsdon C. Smith, all of Chicago, Ill. (Follansbee, Shorey & Schupp, of Chicago, Ill., of counsel), for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This case involves the correctness of the District Court's action in directing the jury to return a verdict for the defendant in a suit for the wrongful death of the plaintiff's decedent. From this verdict and judgment the plaintiff has appealed.

The complaint charges the defendant with negligence in violation of the Federal Employers' Liability Act [1] whereby the plaintiff's decedent was killed. The decedent, who was fifty-three years old, had been employed by the defendant since 1913. For several years he had been hard of hearing.

There is no conflict in the evidence. Only the widow and two fellow employees of the decedent testified. The widow's testimony throws no light upon the problem before us. The witness Galaikis, who was examined through an interpreter, had been working for the defendant as a section hand since 1929. The decedent was his foreman. The witness Plitsis was also a section hand and had been working for the defendant since 1941, under the decedent as his foreman. From these witnesses, aided by a plat of the locale introduced by the plaintiff, the following facts are undisputed in the evidence.

On November 22, 1944, which was a beautiful, clear day, the decedent was working with his gang in the Youngstown, Ohio, yards of the defendant. The tracks in the yard at the point where the decedent and his men were working ran in a general east and west direction. In the east end of the yard, just south of the

---

[1] 45 U.S.C.A. §§ 51–60.

808

tracks, was the yard office. About eighteen hundred feet west of the yard office and on the south side of the tracks was a toolhouse. As the witnesses, aided by the plat, described the locale, from the north to the south there were first two tracks of the New York Central, with which we are not concerned. Next came the tracks of the defendant, first the westbound main and then the eastbound main, and next the track we are primarily concerned with, which up to a point called the "crossover" was referred to as the "old main" and beyond the crossover was referred to as "#1 Lead." The crossover effected a switch from the old main to the east and westbound mains. To make this crossover, there was a part of the track referred to as the "frog." The decedent and his gang were raising the track at the frog. South of the old main #1 Lead, which we shall hereafter refer to as "No. 1" and west of the crossover were tracks Nos. 2, 3, and 4.

At 12:10 p. m., the decedent and his men left their place of work to go to lunch, which they had left in the toolhouse. About that time a regular local freight train of the defendant came in on No. 1 track from the east, and the engine stopped about where the decedent and his men had been working. This was the only engine in the yard when the men left for lunch. The decedent and his men walked west towards the toolhouse, pushing their pushcar on track No. 4. When they reached a point approximately two hundred feet west of where the engine was standing, the decedent turned to his right and walked north from track No. 4 across tracks No. 3 and No. 2.

The court questioned the witness Plitsis, the only witness to testify as to the decedent's actions at this point, as follows:

"Court: How far did you see him? Did you see him as far as No. 1, or part way across, or how far did you observe him?"

"Witness: Right to the No. 1 I saw him the last time."

There were some box cars standing on tracks No. 2 and No. 3. Those on track No. 2 extended "300 feet from the lead where the train was standing." In which direction does not appear. The men walked on down track No. 4 to the toolhouse, took the pushcar off the track, and went into the toolhouse to eat lunch. One end of the toolhouse was used by the section men and the other end by the trainmen, but who used which end does not appear. As the day was pleasant, the section men left the door open while eating their lunch.

Plitsis testified that it took him about ten minutes to eat lunch. He testified that while eating lunch, the men were talking together and interested in their meal. He heard no trains moving or bells or whistles sounding. The men were accustomed to trains moving and bells and whistles sounding. There is no evidence that Plitsis or any of the other men paid any attention to train movements or signals while eating their lunch. After he finished lunch, Plitsis went to look for his foreman. When he was about a hundred feet from the toolhouse, he saw the decedent's body lying between the rails of track No. 1. The body was approximately six hundred feet from the toolhouse. The decedent was lying on his back facing the east, his right wrist on the rail and his right hand severed. The only other injury noticed was to the back of his neck. About thirty minutes had elapsed from the time the decedent had left his men until he was found dead. At the time he was found, there was no train in the yard. The body was found about seven hundred feet west of the point where he had last been seen. How he traveled that seven hundred feet, whether by foot or on a moving train, does not appear.

No one saw the accident. There is no evidence as to how the decedent met his death, except that he was run over by one of the defendant's trains, presumably by the train that was standing on track No. 1 a few minutes before. There was no evidence establishing at what point along the track the decedent was first hit, whether he was dragged any distance, or whether the engine or all the cars or only a part of the cars passed over him. All we have is the dead employee of the defendant, run over by one of the defendant's trains. No evidence as to which one, where, or how.

The plaintiff contends that the evidence shows the defendant was negligent in not maintaining a lookout and not giving a signal of warning. There is no evidence or reasonable inference to be drawn from any evidence that no lookout was maintained or no signal given. As a general proposition, at that position in the yard there was no duty on the defendant to keep a lookout or give signals. Toledo, St. Louis & Western R. Co. v. Allen, 276 U.S. 165, 170, 171, 48 S.Ct. 215, 72 L.Ed. 513; Aerkfetz v. Humphreys, 145 U.S. 418, 420, 12 S.Ct. 835, 36 L.Ed. 758; Sumney v. Southern R. Co. et al., 4 Cir., 89 F.2d 437, 439. Furthermore, the decedent was not placed in any position by any evidence in this case which would show that a lookout would have discovered him and a signal would have warned him, because the lookout would have had to be on the engine, and we do not know from any evidence or any reasonable inference therefrom that the decedent was in front of the engine and that the engine passed over the body. The decedent might have been on the track in front of the engine and have been run over by the engine and the entire train. Or he might have tried to board the moving train in back of the engine to ride down the yard and have fallen between the cars and been killed. Lookouts and signals would have done no good in that event.

But it is said that this is speculation. It is all speculation as to the manner in which the decedent met his death. That is the trouble with the plaintiff's case. One can speculate on how the accident happened, but where is the evidence as to how it did happen? Where is the evidence from which a reasonable inference could be drawn as to how it happened? Many reasonable hypotheses as to how the accident happened may be conjured up, but it is not reasonable hypotheses we are interested in, but evidence from which reasonable inferences may be drawn. If there were any evidence placing the decedent prior to the accident in a position where a lookout could have seen him and caused a signal to be given, then the questions of whether there was a lookout and whether a signal was given would be material. We are asked to infer that the decedent was in a position where he could be seen to be in danger and therefore a duty arose to give a signal. Then we must infer that no signal was given. There is no probative evidence here that no signal was given. We do not know whether a signal was or was not given. Plitsis testified that he did not hear any train or signals, but he was not paying any attention for signals. He was six hundred feet away in the toolhouse, eating his lunch and interested only in that and in talking with his fellow workmen. He had been working in the yards for years with trains moving about and was accustomed to hearing bells ringing and whistles blowing, and he had no reason to be paying any attention for signals while eating lunch. In fact, the train that struck the decedent passed along just three tracks north of where Plitsis was eating lunch, and he did not even hear it. The evidence that Plitsis did not hear any signal when he was not listening is of no probative force. Spreitler v. Louisville & N. R. Co., 7 Cir., 125 F.2d 115; Stephenson v. Grand Trunk Western R. Co., 7 Cir., 110 F.2d 401, 408, 132 A.L.R. 455; Ruth Berg v. The New York Central R. Co., 391 Ill. 52, 60, 62 N.E.2d 676; Menard et al. v. Boston & Maine R. Co., 150 Mass. 386, 387, 23 N.E. 214.

A jury may not speculate and formulate a plausible theory as to where the accident happened and how it happened, and then speculate on what it was that the defendant did that was negligent and caused the accident. If there is some conflict in the evidence as to what the defendant did or did not do, which it should or should not have done, there may be a conflict for a jury to resolve, as was stated in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916. In our case, there is no conflict in the evidence. There is a woeful lack of evidence, which would leave a jury to nothing but speculation. The Supreme Court has recently said that where the jury is left to speculation only, the trial court must step in and direct a verdict. In Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458, the Court, still adhering to the right

of the trial court to direct a verdict when there is only speculation to be indulged in by the jury, said:

"Whatever may be the general formulation, the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked."

■ It is necessary under the Federal Employers' Liability Act that the plaintiff establish by evidence that the defendant was negligent. "Liability arises from negligence not from injury under this Act." Brady v. Southern R. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed 239.

The plaintiff argues that there was death by the defendant's train, therefore the defendant was negligent. That is arguing backward from effect to cause and not from cause to effect. The plaintiff must first prove the defendant's negligence which caused the injury. This it clearly failed to do.

■ Since on the undisputed evidence and reasonable inferences to be drawn therefrom, there is a total failure of proof as to how the accident happened and what the defendant's act or acts of negligence were, the District Court properly directed a verdict for the defendant.

Numerous cases are cited by the plaintiff, such as Lavender v. Kurn, supra; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Boston & M. R. R. v Meech, 1 Cir., 156 F.2d 109; and Griswold v. Gardner, 7 Cir., 155 F.2d 333, all of which can be distinquished from the instant case. Without reviewing the facts in these cases, suffice it to say that in each of them there was some evidence of negligence shown or conflicts in the evidence as to negligence which the jury might have to resolve, and in the resolution of which the jury might have to speculate, as suggested in Lavender v. Kurn, supra. But here where there is no

conflict and a total failure of proof, the jury would have no probative evidence on which to base its verdict and would have to substitute speculation, which it may not do, as the Court said in Galloway v. United States, supra.

We realize that the cases arising under the Federal Employers' Liability Act approach so closely the line which makes the railroad an insurer of its employees, as suggested by a member of this Court in Griswold v. Gardner, supra, that we tread on thin ice in upholding a District Court that has directed a verdict under the Act, especially when we also realize that a strong minority of the Supreme Court supports the thesis that any common law case in which a jury may be demanded should never be taken from the jury, since the jury must be deemed to be as capable of finding a correct answer as the court.[2] As long as the Supreme Court holds that negligence must be shown and that in the absence thereof a verdict must be directed, we feel constrained to sustain the District Court in this case where there is a total failure of proof of negligence.

■ The plaintiff has assigned another error in the exclusion by the court of evidence of the decedent's declaration made as he turned to leave his workmen several minutes before he met his death. We do not know what the witness would have testified to if the question had been asked and if he had been allowed to answer. No offer was made by counsel as to what he expected to prove by the answer of the witness, as provided by Rule 43(c) of the Federal Rules of Civil Procedure.[3] In the absence of an offer to show what the witness would testify to if permitted to answer, we are not in any postition to judge whether the exclusion was prejudicial to the plaintiff's rights, and whether the District Court erred in excluding the evidence. Sorrels et al. v. Alexander et al., 79 U.S. App.D.C. 112, 142 F.2d 769.

We find no error in the record, and the judgment of the District Court is affirmed.

[2] Dissenting opinion of Mr. Justice Black, Galloway v. United States, supra.

[3] Federal Rules Civil Procedure, rule 43(c), 28 U.S.C. following Section 723c.