(No. 12711.—Judgment affirmed.)

WINIFRED FISHER, Admx. Defendant in Error, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. NEGLIGENCE—*contributory negligence does not bar recovery under Federal Employers' Liability act.* Under the Federal Employers' Liability act contributory negligence does not bar a recovery but only goes to the amount of damages.

2. SAME—*when contributory negligence is not sole proximate cause.* Although the negligence of a locomotive engineer in failing to observe that there was no light at a closed switch leading to a turn-table may have been a proximate cause of the accident resulting in his death, such negligence is not the sole proximate cause where it is proved that the agents or employees of the railway company failed to perform their accustomed duties of opening the switch and lighting the signal lamp on the switch-stand.

3. SAME—*under Federal Employers' Liability act burden is on defendant to prove contributory negligence.* The burden of proof of contributory negligence, under the Federal Employers' Liability act, is on the defendant.

4. SAME—*when instruction requiring defendant to prove contributory negligence does not confine it to its own witnesses.* The burden is on the defendant railroad company to prove contributory negligence by its employee, and an instruction stating that the burden is on the defendant to establish the defense of contributory negligence by a preponderance of the evidence does not confine the defendant to its own witnesses nor mislead the jury into such an understanding.

5. SAME—*rule as to furnishing reasonably safe place to work.* The rule requiring the master to furnish the servant a reasonably safe place in which to work has no reference to any other duty than that of keeping the premises physically safe.

6. SAME—*negligent act of defendant need not be sole cause of injury.* The negligent act or omission of the defendant must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause, and where an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it were the sole cause.

290—4

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. H. S. POMEROY, Judge, presiding.

M. L. BELL, and A. B. ENOCH, for plaintiff in error.

BURRY, JOHNSTONE & PETERS, and FRANK T. RANSOM, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

George Fisher, a locomotive engineer in the employ of the Chicago, Rock Island and Pacific Railway Company, was killed on the night of August 16, 1913, by his engine running into a turn-table pit and turning over. The deceased and the railway company were both engaged in inter-State commerce. His administratrix brought an action against the railway company in the circuit court of Cook county under the Federal Employers' Liability act and recovered a judgment for $10,000, which the Appellate Court affirmed. The railway company has brought the record to this court for review by writ of *certiorari.*

The deceased was the engineer of a freight train running west from Joliet and reached Peru, where the accident occurred, about midnight. The engine and three cars were cut off, and after running west past a switch connecting the main track with a side-track known as a passing or storage track, backed in on the storage track and were coupled to nineteen cars standing on that track which were to be included in the train. The railway company had two main tracks at Peru, of which the north track was the westbound track, north of it was the passing or storage track which has been referred to, and north of all the tracks was a round-house of eight or nine stalls, west of which was a turn-table sixty feet in diameter. One hundred and seventy

feet east of the switch connecting the main track with the passing track was another switch which connected the passing track with the turn-table pit one hundred and sixty feet west of the latter switch. After the engine and three cars were coupled to the cars standing on the passing track the signal ·was given to go ahead. The switch on the track leading to the turn-table was set so that the train was turned to that track, which was down-grade to the pit, the engine ran into the turn-table pit and the deceased received the injuries which resulted in his death.

The declaration consisted of eight counts, the first, fourth and fifth of which were dismissed by the plaintiff, by leave of court, after the verdict was returned. Of the remaining counts the second charged that the defendant carelessly and negligently failed to light and keep lighted the signal light on the passing-track switch. The third count charged that the deceased, acting under the order of the defendant, backed the engine off the west-bound main track on the passing track; that it was the duty of certain servants of the railway company to turn the switch on the passing track so as to connect it with the lead to the main line track, and it was defendant's duty not to order the deceased to run the engine off the passing track to the main line track without first setting the switch on the passing track so as to connect with the lead to the main track, yet the defendant, through its servant, negligently failed to set the switch on the passing track to connect with the lead to the main track, and, while the switch was set to connect with the lead to the turn-table pit, negligently ordered the deceased to run his engine from the passing track on the main line track, and the deceased, in reliance on such order, ran the engine westward on the passing track, and as· a result of the defendant's negligence the engine ran to the lead running to the turn-table pit and ran into the pit. The sixth count states that there was a custom in the operation of the railway company's trains that the switch on the

passing track, except when open for the purpose of allow-
ing engines and cars to pass from the lead to the main track
to the passing track, would be kept turned so as to connect
the passing track with the lead to the turn-table pit; that
when the defendant wished to run cars from the west-bound
track to the passing track the switch on the passing track
was opened so as to connect the passing track with the lead
to the main track and a signal was given to the engineer,
who would thereupon run the engine over the lead from the
main line track to the passing track; that the switch hav-
ing been so opened would not be again turned to the lead
running to the turn-table pit until after the engine had
pulled out from the passing track on the main line track;
that the deceased knew of the custom, and, with the other
servants of the defendant, was entitled to rely upon its be-
ing observed and not departed from without notice to him,
but without notice to the deceased the defendant disregarded
the custom and signaled the deceased to run his engine from
the main west-bound track to the passing track without first
opening the switch on the passing track so as to connect
that track with the lead from the main track, and the de-
ceased, relying on the signals and custom, backed the engine
pushing the three freight cars from the lead to the pass-
ing track, the flanges on the wheels of the cars and engine
sprang open the points of the switch and allowed the cars
and engine to pass through onto the passing track and the
points of said switch then sprang back into place and con-
nected the passing track with the turn-table pit, and, by
reason of such negligence of the defendant, when the de-
ceased attempted to run the engine from the passing track
to the lead running to the main line track in reliance on
the custom, the engine ran on the lead to the turn-table pit
and ran into the pit. The seventh count charged that the
railway company failed to furnish the deceased with a rea-
sonably safe place to work, and by reason of such negli-
gence the deceased received his injuries. The eighth count

charged that while the deceased was running an engine on the passing track the defendant negligently signaled the deceased that the switch was set so as to connect the passing track with the lead running to the main track, when, as a matter of fact, it was set so as to connect with the lead running to the turn-table.

The plaintiff in error insists that the court should have allowed its motion, at the close of the evidence, to instruct the jury to find the defendant not guilty. Rule 27 of the railroad company, which was in force at the time, provided that "a signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a stop signal and the fact reported to the superintendent and chief dispatcher. Should no light be burning at night on a switch where a light is usually shown, trains must approach, prepared to stop, until the switch is seen or known to be right, and the fact reported to the superintendent and chief dispatcher." There was evidence tending to show the custom alleged in the declaration to keep the switch in the passing track set for the turn-table lead except when it was open for the purpose of permitting a train of cars to pass back and forth between the passing track and the main track, and when engines and cars were to be run from the main track over the lead to the passing track to open the switch so as to connect the passing track with the main track lead, and when the switch was so opened not to turn it again to the turn-table lead until after the engine had pulled out from the passing track to the main track. There was also evidence that on the night of the accident the switch connecting the passing track with the main track was thrown, but that the brakeman whose duty it was to open the switch connecting with the turn-table track neglected to do so, leaving it set for the turn-table lead, and that in backing by the switch the flanges of the wheels pushed open the points of the switch, allowing the cars and engine to pass to the passing track, and that the

points then sprang into position, leaving the switch set for the pit. After the cars were coupled to the cars standing on the passing track the conductor gave the signal to pull out and the engine drawing the cars started west, but, because of the failure to open the switch, instead of taking the lead to the main track they took the lead to the turn-table, and the accident occurred. There was a signal lamp on the switch-stand which should have been lighted, but it was gummed up with soot and had been discovered to be out twice earlier in the evening and re-lighted, and upon examination ten minutes after the accident the light was found to be out. This was evidence tending to prove negligence on the part of the railway company. It is contended, however, that this was not the negligence which caused the injury but that it was caused by Fisher's failure to observe that the switch lamp was out and to stop and report it, as required by rule 27, and by his negligence in failing to stop the engine after it started on the turn-table lead. If contributory negligence were a defense to the action there would be ground for urging it in this case, but under the Federal Employers' Liability act contributory negligence does not bar a recovery but only goes to the question of the amount of damages. The railway company is liable for an injury resulting in whole or in part from the negligence of any of its officers, agents or employees, and though it is argued that the proximate cause of the accident was the negligence of the engineer himself, it cannot be said, as a matter of law, that his negligence was the sole proximate cause and that the injury was not caused in part by the negligence of the other servants of the railway company.

The plaintiff in error relies upon the case of *Great Northern Railway Co.* v. *Wiles,* 240 U. S. 444, where it was held that there was no reason for the application of the rule of comparative negligence where the rear brakeman of a freight train which had broken in two by the pulling out of a draw-bar disregarded his duty to protect

the rear of the train by going back and giving warning signals but remained in the caboose and was killed there by a following passenger train running into the standing train. In that case, however, there was no negligence except that of the brakeman himself, as was stated by the court in the subsequent case of *Union Pacific Railroad Co.* v. *Hadley,* 246 U. S. 330. This case also was an action for the death of a brakeman who had remained in the caboose of a standing train instead of going back to warn following trains by signals. The *Wiles case* was distinguished on the ground that the railway company in that case was guilty of no negligence except the negligence of the brakeman who was killed, while in the *Hadley case* the railroad company was guilty of negligence in other ways, and even if the brakeman's negligence were the last negligence and was contributory, it could not be said that his death did not result in part from the negligence of any of the employees of the road. In actions for personal injury caused by the willful violation of the Mining act contributory negligence is not a defense. In *Brunnworth* v. *Kerens-Donnewald Coal Co.* 260 Ill. 202, it was said: "The rule of the common law is, that if an injury result from the negligent act of another it is no defense that the negligence of a third person or an inevitable accident or some inanimate thing also contributed to cause the injury, if the negligence charged against the wrongdoer was an efficient cause and without which the injury would not have occurred. (*City of Joliet* v. *Shufeldt,* 144 Ill. 403; *Miller* v. *Kelly Coal Co.* 239 id. 626.) In actions based upon the willful violation of the Mines act for personal injury the contributory negligence of the injured employee stands in the same relation to the right of recovery as the negligent act of a third party does in a common law action. If, in either case, the negligence relied upon as a defense is only a concurring cause, which, in connection with the wrongful

act of the defendant, produces the injury, the defense can not be sustained."

It is contended that the court erred in instructing the jury that if the defendant relies upon the defense of contributory negligence the burden is upon it to establish that defense by a preponderance of the evidence. The objections made to the instruction are, that the requirement to establish the defense of contributory negligence imposed upon the plaintiff in error too high a degree of proof, and that it withdrew from it the benefit of facts put in evidence by the plaintiff tending to show negligence on the part of Fisher. To establish by a preponderance of the evidence is only to prove by a preponderance of the evidence and would not be understood by the jury in any different sense. The burden of proof of contributory negligence, under the Federal Employers' Liability act, is on the defendant. (*Central Vermont Railway Co.* v. *White,* 238 U. S. 507.) The statement of that rule does not eliminate any evidence in the case from the consideration of the jury. While the burden is on the defendant to prove contributory negligence, the statement of the rule does not confine him to the evidence of his own witnesses, and the jury could not have understood the instruction so.

An instruction was given at the request of the plaintiff as follows:

"If you believe from the evidence that the plaintiff's intestate, George Fisher, was killed while employed by the defendant, the Chicago, Rock Island and Pacific Railway Company, and while engaging in commerce between any of the several States, and that the death of said Fisher resulted in whole or in part from the negligence, as charged in the declaration, of any of the officers, agents or employees of said defendant, the Chicago, Rock Island and Pacific Railway Company, you should find the defendant guilty."

The objection made to this instruction is that the negligence alleged in the seventh count was the breach of a

duty to furnish the deceased a reasonably safe place to work; that the evidence established the defense of assumed risk, and that the negligence charged in this count of the declaration, even though proved by the evidence, would not entitle the plaintiff to recover because of the defense of assumed risk. The objection would be valid if the seventh count stated a cause of action for failing to furnish a reasonably safe place in which to work and there was evidence tending to prove it. That count alleged the defendant failed to furnish the plaintiff a reasonably safe place to work and conducted itself so carelessly and negligently in that behalf that it provided a dangerous and unsafe place, as the defendant then knew or in the exercise of ordinary care would have known, and in consequence of the defendant's negligence, while the deceased, as engineer, was operating an engine over the tracks of the defendant, in the exercise of due care for his own safety, the engine ran into a certain pit or turn-table and turned over, whereby the deceased was injured. In *Keefe* v. *Armour & Co.* 258 Ill. 28, the court, in discussing an instruction as to the master's duty to exercise reasonable care to furnish the servant with a reasonably safe place to work, stated that the rule relates to conditions of premises, buildings and things which properly constitute a place for work; that the duty includes the element of locality and has no reference to anything except to keeping of the premises physically safe. In *Peterson* v. *Oak Park Elevated Railroad Co.* 260 Ill. 280, it is said that an instruction that it is the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work is an unobjectionable statement of an abstract rule of law but was inapplicable to the case, because neither in the pleadings nor the evidence was there any indication that the place where the plaintiff was working was unsafe, except the fact that he was hurt there. There was no evidence that the elevated structure itself, the rails, ties, switches and surroundings, were in any respect

defective or could have been made safer in view of the purposes for which they were designed. The rule requires of the master the duty only of keeping the premises physically safe and has no reference to anything else. Here there was no evidence of any defect in the premises. There was nothing unsafe in the place nor any negligence in regard to it. The only negligence was in the operation of the machinery and appliances. Therefore there could have been no recovery on the seventh count, and the verdict must rest on the other counts. There was evidence tending to prove one or more of these counts, and it is held not improper to give such an instruction as the one in question although there is no evidence as to some of the counts. *Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154; *Scott* v. *Parlin & Orendorff Co.* 245 id. 460.

The plaintiff in error objects to the refusal to give three instructions which it requested, based on the hypothesis that the deceased was guilty of negligence which was the proximate cause of the accident and instructed the jury to find the defendant not guilty. The instructions were all properly refused. The jury might find that the contributory negligence of the engineer was a proximate cause of the accident, but this did not relieve the plaintiff in error of liability if its negligence was also a proximate cause of the accident. Where an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it were the sole cause. The negligent act or omission must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause. *Waschow* v. *Kelly Coal Co.* 245 Ill. 516; *Kellyville Coal Co.* v. *Strine,* 217 id. 516.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*