BARBOUR, APPELLEE, *v.* BALTIMORE & OHIO RD. CO., APPELLANT.

(No. 4694—Decided June 12, 1957.)

*Messrs. Scanlon & Schultz,* for appellee.

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

DOYLE, J. This action was commenced in the Court of Common Pleas of Summit County by Reginald G. Barbour, a brakeman in the employ of the Baltimore & Ohio Railroad Company, against the said Baltimore & Ohio Railroad Company.

The petition alleged, in substance, that, while he was engaged in the performance of his duties with his employer, and engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, he stepped from a platform into a moving boxcar, while assisting in the "spotting" of cars on the premises of The National Company, and was caused to trip and fall by nails protruding from the floor of the car; that a portion of the side of the car was lying flat upon the floor with nails protruding therefrom, and, as he fell onto these nails, his left arm was punctured and serious injuries resulted.

The specifications of negligence upon which trial was had were to the effect that: (1) the defendant railroad company failed to exercise reasonable care to provide plaintiff with a reasonably safe place of employment; (2) the defendant failed to warn plaintiff of the condition of the floor of said boxcar; (3) defendant maintained its equipment, and particularly the boxcar, in an unsafe manner, in that it permitted nails to protrude from the floor of the same.

The defendant corporation stipulated that it was engaged in interstate commerce; admitted the employment of the plaintiff on the day of the accident, and that he suffered a puncture wound of his left forearm, which wound was sutured, and that there was then administered to the plaintiff a tetanus antitoxin. Other allegations of the petition were denied.

Pursuant to trial, a jury returned a verdict in favor of the plaintiff and against the railroad company in the amount of $2,500, upon which judgment was later entered, following the overruling of various motions, including a motion for judgment *non obstante veredicto* and a motion for a new trial.

Objection was further made to the court's acceptance of the following answers to interrogatories submitted to the jury in the event of the rendering of a general verdict. The record shows the interrogatories and answers as follows:

"No. 1. Do you find that the defendant was negligent?

"Answer: Yes.

"No. 2. If your answer to question number one is in the affirmative, state of what the negligence consisted.

"Answer: The jury agrees the defendant guilty in allowing a hazardous condition to exist in excess of a reasonable safe place to work. We believe that due to the examination by the car inspector said car should have been in reasonable condition. By reasonable condition we assume that the side of the car should have been intact and not lying on the floor nor should there have been spikes protruding in the floor over which said plaintiff tripped and fell sustaining his injury."

From the judgment stated above, appeal has been taken to this court.

Numerous errors are assigned which are asserted to be prejudicial in character and require a reversal of the final order of the trial court.

Attention will now be directed to these claims in connection with facts shown to exist.

On October 4, 1953, the boxcar involved in this case, owned by the defendant railroad company, was received by the defendant company at its Akron junction yards from the Erie Railroad, on which line it had been in use for a period of time.

By agreement between the two railroad companies, when cars are returned to the owners, an inspection is made by a joint car inspector employed by both companies. This inspection consists of a check "to see whether the running gears * * * [are] okay and safe to operate," and whether it should be classified for "high-class loading or rough freight loading."

The car was inspected by an inspector and classified for "rough freight loading" and was then moved by the defendant to Aultman, Ohio, where it was taken to The National Company plant siding for eventual loading and shipment with rough freight.

Whether nails protruded from the floor, and whether a part

of the side of the car with nails protruding therefrom was on the car's floor at the time of inspection, is not shown, from the evidence. However, the superintendent of the Akron division of the defendant company testified that a car in such condition would be passed by the inspector for the handling of rough freight.

On October 6, 1953, a train crew of the defendant company, which included the plaintiff, became engaged in the "spotting" of freight cars and of the boxcar here involved. "Spotting * * * is referred (to) on the railroads as placing cars for either loading or unloading at designated points in a plant." The operation of spotting, with which we are here concerned, was the placing of cars on The National Company's premises for the purpose of loading them with tile.

The "spotting" operation consisted first of putting the cars in the train in proper order for placement for loading; a diesel locomotive then pushed the cut of cars (9 to 14 in number) in a southerly direction past a platform of considerable size; an engineer and a fireman were in the engine cab; a head brakeman walked on the platform along with the train, four to six car lengths ahead of the engine; plaintiff, the rear brakeman, walked along the platform four to five car lengths from the head end of the cut of cars; and the conductor, in charge of the spotting operation, placed himself at the head end of the train for the purpose of properly placing or spotting the cars.

The operation was conducted by means of signals given by the various members of the crew; the train was proceeding at a speed of three miles an hour.

The plaintiff testified that, as he walked beside the train, at a point where the tracks curved to the left, the conductor disappeared from view; that the cars were traveling a little faster than he was walking, and as a car came along with its door open, he "stepped in the door to overtake the view of the conductor"; and that, as he stepped in, his left foot caught on a nail head in the floor, and he fell and injured himself on nails protruding from the side of the car which had fallen to the car floor.

The testimony continued with the statement that he then got up, looked out of the car, and relayed the signal to stop.

1. The appellant claims that "The trial court erred in overruling the motion of defendant for a directed verdict and for judgment in its favor at the close of all the evidence"; and that the trial court further erred "in overruling the motion of defendant for judgment notwithstanding the verdict."

It is first observed that, under the Federal Employers' Liability Act, 45 U. S. Code, Section 51 *et seq.*, every common carrier, while engaged in interstate commerce, is liable for injuries suffered by any person while employed by such carrier in commerce and resulting from the negligence of any of the officers, agents or employees of such carrier. The act likewise is construed to require a common carrier to furnish a reasonably safe place for an employee to work, and this duty continues even though the employee in doing his work is sent upon the premises of another. *Elkins* v. *Wheeling & Lake Erie Ry. Co.*, 160 Ohio St., 47, 113 N. E. (2d), 233.

In actions brought under this title by an employee against his employer, the rights and obligations of the parties depend upon the act and the applicable principles of common law as interpreted by the federal courts. *Bevan* v. *New York, Chicago & St. Louis Rd. Co.*, 132 Ohio St., 245, 6 N. E. (2d), 982.

The appellant asserts that "The plaintiff having failed to prove that the defendant had notice of the defective condition" of the boxcar, "or that defendant had reason to believe the car was defective, the trial court erred in failing to" enter judgment for the defendant upon its respective motions.

It is further claimed that, in addition to an entire absence of proof of actual notice to the appellant, there is no evidence that the condition of the boxcar had existed for such a length of time as to put the railroad company on constructive notice of its condition, and as a result thereof the plaintiff has failed to make his case.

Recovery under the Federal Employers' Liability Act is allowed on the basis of negligence only, and the case law treating this question holds generally that "the party carrying the burden of proof must show by direct or circumstantial evidence (1) that an officer, agent or employee of the railroad was responsible through negligence for the presence of the * * * hazard complained of, or (2) that at least one of such persons had

actual knowledge of its presence before the accident, or (3) that the presence of such * * * hazard had continued for a sufficient length of time to justify the inference that the failure to know about it and remove it was due to a want of proper care.'' *Bevan* v. *New York, Chicago & St. Louis Rd. Co., supra* (132 Ohio St., 245), at p. 251.

On the question of notice to the railroad company of the defective condition of the car as bearing on the issue of negligence, the undisputed facts are that on October 4, 1953, the car was received from the Erie Railroad at the defendant's Akron junction yards and then inspected by an inspector in the hire of both the Erie and defendant railroads.

On either that same day or the following day (October 5), it was moved by the defendant to Aultman, Ohio, where it was placed on The National Company's siding for later loading and shipment with The National Company's freight.

On the next day (October 6), the car was spotted for loading, in which operation the plaintiff was injured as above described.

There is no direct evidence of the physical condition of the interior of the car at the time of inspection. The fact is, however, that it passed inspection for rough hauling, and, according to the testimony of the division superintendent of the defendant company, a car in the condition which it was found to be at the time of plaintiff's injury would be passed by an inspector for rough freight.

There are many reported cases treating the admissibility and weight of evidence on the problem of ''physical condition of place or thing before or after as evidence of condition at time of event.''

In 21 Ohio Jurisprudence (2d), Evidence, Section 125, appears the following statement:

''The presumption of the continued existence of a person, a personal relation, or a state of things, is prospective and not retrospective.''

The citation of authority in the footnotes is to 20 American Jurisprudence, Evidence, Section 210, wherein the same statement appears. In 31 Corpus Juris Secundum, Evidence, Section 140 a, will be found this statement:

"As a general rule mere proof of the existence of a present condition or state of facts or proof of the existence of a condition or state of facts at a given time, does not raise any presumption that the same condition or facts existed at a prior date, since inferences or presumptions of fact ordinarily do not run backward.

"However, the general rule is not of universal application. Whether the past existence of a condition or state of facts may be inferred or presumed from proof of the existence of a present condition or state of facts, or proof of the existence of a condition or state of facts at a given time, depends largely on the facts and circumstances of the individual case, and the likelihood of intervening circumstances as the true origin of the present existence or the existence at a given time."

See cited cases in support of the text.

Oliver Wendell Holmes, J., in *LaPlante* v. *Warren Cotton Mills,* 165 Mass., 487, 43 N. E., 294, in considering the question now before us, said: "It is said that presumptions do not run backward. But that depends on the case." The decision indicates that the Massachusetts court "looked backwards."

In the case before us, we are of the opinion that there is cogency in the reasoning that an inference of probative value may be drawn from the facts directly proved, that the boxcar was in the same or similar condition at the time of inspection three days before the accident as it was at the time of the accident; and that notice to the inspecting agent of that condition was notice to the Baltimore & Ohio Railroad Co. of such condition.

The inference is buttressed by the physical possession of the car by the defendant on October 4; its transportation to The National Company's yards on October 4 or 5 by the defendant company; its handling for spotting by the train crew of the defendant on October 6; its nonuse in commerce during this period; and the fact that a car, in the condition in which it was found to be at the time of the accident, would, under the practice of the railroad, have been passed in that condition for the hauling of rough freight pursuant to inspection.

In further support of the inference of notice to the company of the hazardous condition of the boxcar prior to the in-

jury, we cite II Wigmore on Evidence (Third Ed.), Section 437. The author writes, with many case authorities cited, as follows:

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period.*

"The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand. That a soap bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence to-day will vary according to the nature of the tree and the conditions of life in the region. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control.

"Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue. Here the disturbing contingency is that some circumstance operating in the interval may have been the source of the subsequent existence, and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred and been the true origin. On landing at New York it can hardly be inferred that the steamer at the next dock has been there for a week; but it may usually be inferred that the dock has been there for some years; while the particular circumstances of appearance and the like will in the latter instance affect the length of time to which the inference could be carried back. Here, as with prior indications, the *interval of time* to which any inference will be allowable must depend on the nature of the thing and the circumstances of the particular case.

"The opponent, on the principle of *Explanation* \* \* \*, may always attempt to explain away the effect of the evidence by showing that in the meantime other circumstances have oc-

curred to raise probability of change instead of continuance.

"This general principle that a *prior* or. *subsequent* existence is evidential of a later or earlier one has been repeatedly laid down * * *."

See also: "Comment Note.—Physical condition. of place before or after event as evidence of condition at time of event," ·80 A. L. R., 446.

While it is true that there is no evidence showing that the boxcar was not "tampered with" during the short period of nonuse—between the time of inspection and the accident—such fact is of no importance on appeal, because there is a reasonable basis in the record for inferring that the condition of the car remained unchanged during that period of time; and the jury having drawn the inference, the appellant railroad is not free to relitigate the factual question in a reviewing court, when the making of the inference by the jury is not manifestly against the weight of the evidence or contrary to law.

In *Lavender, Admr., v. Kurn, et al., Trustees,* 327 U. S., 645 653, 90 L. Ed., 916, 923, 66 S. Ct., 740 (a case involving the federal statute here involved), the court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

We have examined carefully the remaining claimed errors, and. are of the opinion that none is prejudicial in character.

We find that the plaintiff made his case with sufficient proof under the pleadings, and that the damages awarded for the in-

juries received and the aggravation thereof are not manifestly against the weight of the evidence.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.