**Lester Gene BROWN, Appellee,**

v.

**CEDAR RAPIDS AND IOWA CITY RAILWAY COMPANY, a corporation, Appellant.**

No. 80–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1980.

Decided June 11, 1981.

Rehearing Denied July 21, 1981.

William M. Dallas, Cedar Rapids, Iowa, for appellant.

William G. Jungbauer, Yaeger & Yaeger, Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Cedar Rapids and Iowa City Railway Co. (the Railroad) appeals from a verdict and $92,500 judgment[1] for Lester Gene Brown (Brown) in his action brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60.

The facts of the accident are not in dispute. Brown is a brakeman employed by the Railroad. On April 10, 1975, he was riding on the side of a moving boxcar, relaying signals from the conductor to the engineer. He was hit in the head by a metal derail switching stand located less than eight feet (8') from the center line of the adjacent track. He suffered a skull fracture and concussion, neck strain, shoulder strain, and knee strain.

Brown alleged that the Railroad was negligent in failing to provide him a reasonably safe place to work. The Railroad generally denied negligence on its part and alleged that Brown's injuries were caused by his contributory negligence in failing to keep a proper lookout. The jury found for Brown. This appeal followed.

## I. Evidence of State Rules

Under the FELA, negligence must be determined by common law principles as established and applied in federal courts. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949). The Railroad's duty to provide a safe place to work entails not only proper construction of structures but also a continuing duty to maintain the premises in safe condition. *Lowden v. Hanson*, 134 F.2d 348, 351 (8th Cir. 1943). In a FELA action, the employee must show by direct or circumstantial evidence that (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care. *Barbour v. Baltimore & Ohio R.R.*, 105 Ohio App. 191, 152 N.E.2d 134, 139 (1957). *See Harp v. Illinois Central Gulf R.R.*, 55 Ill.App.3d 822, 12 Ill.Dec. 915, 370 N.E.2d 826 (1977).

State railroad rules provided that switch stands shall have horizontal clearances of not less than eight feet from the center line of the adjacent track to the nearest part of the switch stand. The rule had originally been adopted by the Board of Railroad Commissioners of the State of Iowa, effective January 15, 1936. Apparently, however, the rules were not filed in the office of the Secretary of State until December 28, 1951. The 1951 filing states (emphasis added): "These rules apply to all new construction of tracks, bridges, building and other structures adjacent to the tracks of railroads, carried on *after date on which these rules became effective.*"

The rules were revised in 1975 and became effective March 1, 1976, but the eight foot clearance remained unchanged. The 1975 booklet states (emphasis added):

---

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

"These rules apply to all new construction of tracks, bridges, buildings and other structures and facilities adjacent to the tracks of railroads carried on *after January 15, 1936.*"

Over the Railroad's objections, the court admitted the 1975 booklet as an exhibit, but did not allow it to go with the jury during deliberations. The 1951 rule was read to the jury.

■ The Railroad contends that it was error to admit the 1975 revision, which did not take effect until after the date of the accident. The booklet was admitted to rebut the Railroad's claim that Brown had not shown continuity of the rule since 1936. The standard actually had remained unchanged from 1936 to the present. But the Railroad claims it was prejudiced because the quoted language from the booklet provided a basis for an inference that the switch stand had been unlawfully built and maintained after 1936, when in fact the 1936 rule had not been officially filed until 1951.[2] We will assume, without deciding, that it was error to admit the 1975 booklet. It was not reversible error, however, because, as discussed below, it was merely cumulative.

■ The Railroad also contends that it was error to admit the 1951 rule because the 1951 rule applied only to new construction and there was no evidence that the switch stand was constructed after 1951. Therefore, the Railroad claims that it is entitled to a presumption that the switch stand was lawfully built and maintained.[3] This contention lacks merit.

The jury was not required to draw any inference at all about when the switch stand was built. The case was not submitted on a negligence per se basis, but rather on common law negligence. The court assumed that the stand was constructed before the regulations took effect and, therefore, did not violate the regulations. Nevertheless, the court found, "This action of the responsible public authorities is relevant in determining the common law standard of care to be observed by defendant ...." *Brown v. Cedar Rapids & Iowa City Ry.*, No. C 78–21 (N.D.Iowa Feb. 25, 1980) (order denying motion for new trial) (slip op. at 4), *citing Curtis v. District of Columbia*, 124 U.S.App.D.C. 241, 363 F.2d 973, 974–75 (1966) (subsequently enacted building code admitted). *Cf. Hassan v. Stafford*, 472 F.2d 88, 94 (3d Cir. 1973) (expert cross-examined about subsequently enacted fire safety code).

Instruction No. 12 defined the limited purpose for which the rules were admitted thusly:

There is evidence in this case of a state regulation regarding track clearances which provides that switch stands exceeding four feet in height shall have horizontal clearances of not less than eight feet from the center line of the track.

Evidence of this regulation is admissible as bearing on whether defendant used

2. The Railroad argues that the 1936 rules were not admissible as state regulations because they did not become effective until they were filed with the Secretary of State. Brown counters that the 1936 rules could be admitted on the same basis as voluntary industry standards, advisory safety codes, and other rules not having the force of law. We are aware that the trend supports introduction of such codes or standards as evidencing a standard of care. *See* discussion in text, *infra*, at 163. The 1936 rules were not admitted; therefore, we need not reach that issue.

3. Where the employee has attempted to require production of evidence in the railroad's possession and to examine agents of the railroad to obtain information in connection with the evidence, an unfavorable inference can be drawn from the railroad's failure to introduce the evidence or explain its absence. *Kurn v. Weaver,* 25 Tenn.App. 556, 161 S.W.2d 1005, 1017 (1940). *See Milom v. New York Cent. R.R.,* 248 F.2d 52, 55 (7th Cir. 1957) (no unfavorable inference where employee has made no attempt to procure evidence), *cert. denied,* 355 U.S. 953, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958).

Here, the information about when the switch stand was built was under the Railroad's exclusive control. The Railroad failed to supply information in response to either interrogatories or supplemental interrogatories by Brown. Therefore, if any inference were to be drawn, it would be the one most unfavorable to the Railroad, namely that the switch stand was built after 1951 and in violation of the state rule.

due care under the circumstances to provide plaintiff with a safe place to work. Failure to comply with the regulation, though not conclusive on the issue of negligence, is one of the factors along with all the other evidence which you may consider in determining whether defendant was negligent.

The trend in federal as well as state court is to allow admission of advisory safety codes promulgated by governmental authority as showing an acceptable standard of care. Riley, *The Admissibility of Advisory Safety Codes in Iowa on the Issue of Negligence*, 26 Drake L.Rev. 409 (1976–77). The trend also favors admission of industry or voluntary association codes and of private codes adopted by an employer. Riley, *supra*, at 411–17. *See also* Annot., 58 A.L.R.3d 148 (1974); Annot., 43 A.L.R.2d 618 (1955). Such codes do not have the force of law and do not establish negligence per se.

In a FELA case, the First Circuit affirmed admission of standards concerning the design of highway and railroad crossings against the defendant's contention that those standards were more stringent than the reasonably prudent person standard. *Boston & Maine R.R. v. Talbert*, 360 F.2d 286, 290 (1st Cir. 1966). In that case, as in this one, the court instructed the jury on the standard of care to be applied and also instructed the jury that the safety standards were "one more piece of evidence" to consider. *Id. See also Quinn v. United States*, 312 F.Supp. 999, 1005 (E.D.Ark. 1970), *aff'd*, 439 F.2d 335 (8th Cir. 1971) (Army Corps of Engineers traffic control regulations); *Northern Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176 (Alaska 1977) (Uniform Building Code); *St. Louis-San Francisco Ry. v. White*, 369 So.2d 1007 (Fla.App.) (American Association of Railroads rules), *cert. denied*, 378 So.2d 349 (Fla.1979); *Davis v. Marathon Oil Co.*, 64 Ill.2d 380, 1 Ill.Dec. 93, 356 N.E.2d 93 (1976) (Division of Fire Prevention regulations); *Huckleberry v. Missouri Pacific Ry.*, 324 Mo. 1025, 26 S.W.2d 980 (1930) (American Railway Association rules).

The "experience and expertise" of public authorities can provide valuable assistance to the trier of fact in determining what standard of care is effective and feasible. The jury was explicitly reminded by Instruction No. 12 of the limited purpose for which the clearance regulation was admitted. The instruction correctly stated the law. Further, in order to avoid prejudice, the court did not allow the regulations to go with the other exhibits to the jury room. There was no error in this regard.

■ Moreover, if the court had erred in admitting the eight-foot clearance standard, there was such strong other evidence of negligence by the Railroad that the clearance standard was merely cumulative evidence. Erroneous admission of cumulative evidence is harmless error. *E. g., Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir. 1978); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2885 (1973). *See Liepelt v. Norfolk & Western Ry.*, 62 Ill.App.3d 653, 19 Ill.Dec. 357, 378 N.E.2d 1232 (1978), *rev'd on other grounds*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) (FELA; admission of preempted statute).

Aside from whether the stand was negligently constructed, the facts show conclusively that the Railroad had actual knowledge of the dangerous condition. In 1974, the year before the accident involving Brown, another Railroad employee struck his head on this same switch stand while riding by on the side of a boxcar. That employee reported the accident to the Railroad dispatcher and warned that someone else would get hurt unless the stand was moved. The Railroad requires employees to ride on the side of the boxcars past this switch stand for a number of reasons. Thus, the Railroad had actual knowledge that an injury could occur to another employee and ample time to repair the dangerous condition.

The facts also show that the Railroad had constructive knowledge of the unsafe condition.[4] In *Denver & Rio Grande Western*

---

4. Forty-five states have rules or regulations prescribing minimum clearances. None of these state rules allows less than an eight-foot clearance to the center of the track. This fact

*R.R. v. Conley,* 293 F.2d 612, 613 (10th Cir. 1961), where a rail had dangerously deteriorated after more than thirty years, the duty the law imposed upon the railroad to inspect the tracks imputed to it constructive knowledge of the unsafe condition. In *Wallingford v. Terminal R.R. Ass'n,* 337 Mo. 1147, 88 S.W.2d 361 (1935), whether the railroad was negligent in permitting a switch stand to remain in dangerous proximity to the track was held to be a jury question.

Here, if the switch stand were constructed before 1951, as the Railroad claims, it would have been at least twenty-five years old in 1975. Uncontradicted evidence showed that the switch stand was less than eight feet from the center of the adjacent track and further that the ties the stand was built on were bowed so that the stand was progressively and continually leaning closer to the track.[5] The unsafe condition had continued for at least twenty-five years. That was a sufficient length of time to justify the inference that failure to know about it and correct it was due to want of proper care. Therefore, the jury could have found that the Railroad was negligent in failing to maintain the stand in safe condition.

In short, this was not a case where the jury members might have been so impressed with the regulation that they gave it effect despite an absence of other evidence which would support a finding of negligence. *Compare Curtis v. District of Columbia, supra,* 363 F.2d at 978 (Prettyman, J., dissenting). Here, there was overwhelming other evidence of negligence. The jury was correctly instructed on the FELA standard of care and instructed to consider the regulation along with all the other evidence. Even without the regulation, there was sufficient evidence to support a finding of negligence. The regulation was merely cumulative evidence.

## II. Instruction

Requested Instruction No. 4 was submitted by the Railroad, ostensibly to set out what Brown had to prove to establish common law negligence by the Railroad. Paragraph one of the requested instruction would have required Brown to establish that it was necessary for him to ride on the side of the boxcar in order to perform his work. Paragraph two would have required Brown to prove either that he had no knowledge of the close clearance or that he failed to appreciate the danger. Paragraph three would have required Brown to prove that the Railroad knew that its employees would ride on the side of a moving car and realized that it would involve an unreasonable risk to such employees and expected that the employees themselves would not realize the danger.

Requested Instruction No. 4 concluded as follows:

> If you find that the Plaintiff has established by a preponderance of the evidence each and all of the foregoing propositions, it would be your duty to find that Defendant was negligent in failing to provide the Plaintiff with a reasonably safe place to work.

> If, however, you fail to so find, then it would be your duty to return a verdict for the Defendant because of the failure of the Plaintiff to establish one of the essential elements of his case.

alone suggests the Railroad was on notice of that standard.

**5.** The distance between rails and the width of boxcars are standard and have not changed. The distance between rails is 56½ inches; the distance from the center line to the edge of the track is 28¼ inches. The boxcar overhangs the rail 30 inches, or a total of 58¼ inches from the center line.

Eight feet is 96 inches; 96 inches minus 58¼ inches leaves 37¾ inches, over three feet, between a passing boxcar and the nearest a switch stand could be if it complied with the eight foot clearance rule.

The evidence here was that the switch stand was as close as one foot from a passing boxcar. Several employees have had to ride on the side of a boxcar past this stand and have had to hug the boxcar tightly to get past the stand.

Unless a requested instruction is entirely correct and may be given without qualification, there is no error in refusing it. *Emery v. Northern Pacific R.R.*, 407 F.2d 109, 112 n.3 (8th Cir. 1969). So long as the entire charge fairly and adequately states the law applicable to the issues, the requirements of the law are satisfied. *Id.* at 113. The district court properly refused to give the Railroad's requested Instruction No. 4 because it was an incorrect statement of the law.

First, paragraphs two and three both imply that a plaintiff can assume the risks of employment. A plaintiff cannot be held to assume the risk in a FELA case. 45 U.S.C. § 54; 3 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 94.11 (3d ed. 1977).

Second, although the FELA does recognize contributory negligence, the requested instruction would have improperly placed on Brown the burden of proving that he was not contributorily negligent. Under the FELA, the burden of establishing contributory negligence is on the employer. 45 U.S.C. § 53; *e. g., Liepelt v. Norfolk & Western Ry., supra*, 19 Ill.Dec. at 367, 378 N.E.2d at 1242, *citing Fisher v. Chicago, Rock Island & Pacific Ry.*, 290 Ill. 49, 56, 124 N.E. 831 (1919); 3 E. Devitt & C. Blackmar, *supra*, § 94.16.

Third, the requested instruction would have made contributory negligence, if any, an absolute bar to recovery. Under the FELA, contributory negligence is not a complete bar to recovery, but in some cases may be used to diminish the damages.[6] 45 U.S.C. § 53; *e. g., Byler v. Wabash R.R.*, 196 F.2d 9, 11 (8th Cir.), *cert. denied*, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952).

Finally, our reading of the entire charge shows that those portions of requested Instruction No. 4 which were correct statements of the law were contained in other instructions given by the court. The district court did not err in refusing to give requested Instruction No. 4.

Accordingly, the judgment of the district court is affirmed.

---

**6.** 45 U.S.C. § 53 provides as follows:

Contributory negligence; diminution of damages

In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.