[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-14224
Non-argument Calendar

————————————————

D.C. Docket No. 3:14-cv-00179-WHA-WC

JIMMIE ROGERS,

Plaintiff–Appellee,

ROBERT ROGERS,

Plaintiff,

versus

SOUTH STAR LOGISTICS, INC.,
SURINDER SINGH GILL,

Defendants–Appellants,

GILL SINGH,

Defendant.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama

————————————————

(October 13, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal arises from three evidentiary disputes in a negligence action. Plaintiff Jimmie Rogers sued Defendant Surinder Singh Gill and his employer, Defendant South Star Logistics, Inc., for negligent driving resulting in a traffic accident. After the jury awarded Plaintiff $500,000, Defendants moved for a new trial based on these three evidentiary disputes. The district court denied the motion. Defendants appeal; we affirm.

## BACKGROUND

In March 2014, Plaintiff sued Defendants for negligence. Plaintiff alleged that on September 12, 2012, he was driving a pickup truck on a highway as part of a caravan of vehicles. According to the complaint, Plaintiff and the other drivers in the caravan were traveling slowly in preparation for a right turn when Gill, driving a tractor-trailer for South Star, negligently collided into Plaintiff from behind.[1]

At trial, three eye-witnesses described the crash. Roughly two versions of the accident arose. Plaintiff and his cousin testified that they were travelling south on U.S. Highway 431 as part of a caravan of vehicles. Plaintiff was last in the

---

[1] Plaintiff alleged several other claims, but the district judge granted judgment as a matter of law on each. They are not at issue here.

caravan, and Plaintiff's cousin was second to last. While traveling south on the highway, the caravan aimed to turn onto a small road that intersected the highway on the highway's eastern side. Because a median prevented the caravan from turning left onto the road, the caravan traveled a short distance further south on the highway and U-turned from the southbound left lane. Both Plaintiff and his cousin verified that no traffic was oncoming and then U-turned into the right lane of the northbound side of the highway. Plaintiff and his cousin began slowly traveling northward towards the small intersecting road a short distance ahead. Plaintiff and his cousin each signaled that they were turning right onto the road, but around the time of Plaintiff's turn, Gill's northbound tractor-trailer struck Plaintiff from behind.

Contradicting Plaintiff's account, Gill testified that while he was driving north in the right lane of the highway, Plaintiff sped past him from the left lane, swerved into the right lane, and braked too quickly for Gill to stop.

## DISCUSSION

Three rulings at trial, all objected to by Defendants, form the basis of this appeal. First, the district judge permitted Plaintiff's counsel to read to the jury a letter written by Plaintiff's doctor confirming the costs of anticipated spinal surgery for Plaintiff. Second, the district judge permitted Plaintiff's counsel to solicit testimony describing a policy of defendant South Star's concerning the

3

distance that its drivers are expected to maintain between themselves and other vehicles.  Third, Plaintiff was allowed to testify that he had not undergone surgery for the injuries he received in the accident because, according to his doctors, his blood pressure was too high to undergo surgery.  Defendants asserted the above rulings to be erroneous and the grounds for a new trial.  The district judge denied the motion.  Plaintiff appeals.  We agree that the district court did not abuse its discretion either in the above evidentiary rulings or in its denial of Defendant's motion for a new trial.

## I.    Standard of Review

"We review rulings on the admission of evidence and motions for new trial for abuse of discretion."  *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1301 (11th Cir. 2007) (quoting *Ad-Vantage Telephone Directory Consultants v. GTE Directories Corp.*, 37 F.3d 1460, 1463 (11th Cir. 1994)).  "An abuse of discretion arises when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir. 2011) (quoting *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005)).

Even if "a District Court abuses its discretion in admitting evidence, we may still find the error harmless."  *Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of*

4

*Sovereign Order of St. John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1295 (11th Cir. 2012) (quoting *Gamory*, 635, F.3d at 492). "An evidentiary error is harmless if 'sufficient evidence uninfected by any error supports the verdict, and the error did not have substantial influence on the outcome of the case.'" *Id.* (quoting *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007)). "[T]he inquiry is always directed to the same central question—how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).

## II.    Dr. Burkus's Letter Concerning Anticipated Costs for Plaintiff's Surgery

The jury returned a verdict for Plaintiff in the amount of $500,000. One item of compensatory damages that had been requested by Plaintiff was future medical expenses, which included the anticipated costs of a three-level spinal fusion surgery made necessary as a result of the injuries he suffered during the automobile accident. At trial, Plaintiff's counsel indicated to the jury that the total future and past medical damages were $152,000, with between $114-115,000[2] of those damages attributable to his orthopedic surgeon's stated charge for this surgical procedure.

---

[2]  As discussed *infra*, the actual amount of the surgery was $114,453.00.

Defendants argue that Plaintiff failed to provide any non-hearsay evidence to support his assertion that the anticipated surgery would cost $114,453.00. Moreover, Defendants contend that the district court erred by permitting Plaintiff's counsel to read to the jury the letter from Plaintiff's orthopedic surgeon setting out the charge for the procedure. Given these alleged evidentiary deficiencies underlying the jury's determination of damages, Defendants argue that they are entitled to a new trial. We disagree.

Shortly before trial, Plaintiff's orthopedic surgeon, Dr. John Burkus, submitted to a videotaped deposition to be used at the trial of the case. During that deposition, Dr. Butkus testified about Plaintiff's injuries, his past medical treatment, and his anticipated future medical treatment. Defense counsel cross-examined him about the estimated costs for the surgical fusion procedure, which costs the doctor confirmed were laid out in the letter to which both the doctor and both counsel referred during the video deposition. It is this letter that set out the specific amount that the doctor would charge Plaintiff for the surgical procedure.

Prior to trial, but after the deposition, Defendants filed objections to various items on Plaintiff's exhibit list, one of which was the above letter from Dr. Burkus concerning the cost for the surgical procedure. Defendants based their objection on Federal Rule of Evidence 802 and 901, stating that this "record" was not related to the accident. In its summary order ruling on these objections to the exhibit list,

6

the district court sustained the objection to admission of the letter on hearsay

grounds, but indicated that Dr. Burkus could testify as to his findings.  The letter

read as follows:

> To Whom It May Concern:
>
> [Plaintiff] has been under my care since his motor vehicle
> collision on September 12, 2012.
>
> As a result of the September 12, 2012 collision, [Plaintiff]
> suffered a traumatic cervical injury at the C3-4, C4-5 and CS-6
> levels of his cervical spine.  I relate all of his problems in this
> regard to the accident of September 12, 2012.
>
> [Plaintiff] is a candidate for an Anterior Cervical
> Decompression, Fusion with Instrumentation, Iliac Crest Bone
> Graft and Allograft at C3-4 thru C5-6.  This surgery entails
> hospitalization for 1-2 days.  The surgeon's fees for this
> procedure are approximately $34,975.00.  The hospitalization
> fees are approximately $78,478.00.  The total cost for this
> surgery would be approximately $114,453.00.
>
> I have advised [Plaintiff] that even if he has this surgery, he will
> still more than likely suffer from some permanent disability in
> the form of pain, decreased mobility and strength.
>
> If you have any questions or concerns, please do not hesitate to
> contact my office . . . .

When Dr. Burkus's testimony via video deposition was presented at trial,

defense counsel interrupted the video to protest what he knew was about to be Dr.

Burkus's impending discussion of this letter.  During the sidebar discussion, the

district judge indicated that the doctor could testify about what he wrote, stating, "I

7

sustained the objection to the letter as such.  [Dr. Burkus] can testify to what he -- to what he wrote and what he said and all.  That was the point of all of this."

The video deposition proceeded.  In that deposition, Dr. Burkus noted that he would be using electronic records to refer to Plaintiff's condition and treatment. He discussed the injuries Plaintiff suffered as a result of the accident, including the need for the surgical fusion.  He was subject to cross-examination by Defendants' counsel.  Of pertinence to the present issue, the doctor testified specifically about the charge for performing fusion surgery on Plaintiff.  Specifically, defense counsel[3] referred the doctor to the letter in question (marked as an exhibit for the deposition) and Doctor Burkus confirmed that this letter, which he wrote and signed, concerned "the surgeries that [Plaintiff] would need and the anticipated costs for these services."  Doctor Burkus indicated that he writes such letters to patients considering surgery to alert them both to the total cost of the procedure and to their own co-pay responsibility.  Further, he testified that the costs cited in the letter are the usual and customary charges for the procedure.  Moreover,

---

[3]  Because the transcripts of the deposition found in the record are partial transcripts and skip many pages in the complete transcript, it is not altogether clear which attorney is asking which questions.  As best we can determine, it looks as if defense counsel is asking the above questions. Indeed, the district court indicated that defense counsel cross-examined on this matter.  But our analysis is unchanged even if it were Plaintiff's counsel who was the questioner.  The topic was covered during the deposition and defense counsel had an opportunity to ask any questions it chose to impeach Dr. Burkus's determination of the reasonable cost of the procedure.

8

counsel questioned the doctor as to the possibility of a lower cost should only a one or two-level fusion be performed, instead of a three-level.

Dr. Burkus, however, never repeated during his testimony the precise number that he had set out in the letter as being the reasonable and anticipated charge for the surgical fusion.  Instead, with both him and counsel well aware of the amount of the costs set out in the letter, everyone during the deposition simply referred to the letter during the discussion of that matter.  Presumably, Plaintiff's counsel never envisioned that the letter, marked as an exhibit to the deposition, would not be admitted along with the deposition at trial.

At the conclusion of the playing of the video, the district judge noted that his assumption had been that the doctor would actually state during his testimony the amount of the costs of the surgery that the doctor had calculated. The judge initially stated:

> I was expecting Burkus to testify on there as to what he was -- he had said that the reasonable and necessary charges for that surgery would be, and he didn't go into that.  My ruling on sustaining the exhibit was that I didn't want the exhibit to be a document that would go back to the jury since the doctor could testify to it.  I'm not inclined at this time to let the letter that he referred to in the deposition be read without it coming in as an exhibit.

In response, Plaintiff's counsel argued, "Dr. Burkus testified that all his charges related to past and future would be reasonable and necessary. . . .  I think I've laid the predicate for that to come in."  Having heard from both counsel, the

9

district judge announced, "I'm going to allow the plaintiff's counsel to read Dr.

Burkus's letter, but it won't come in as an exhibit." Accordingly, trial resumed

and Plaintiff's counsel read the letter to the jury in order to establish that

$114,453.00 was what Dr. Burkus would charge for the surgery.

Defendants objected and, after trial, they moved for a new trial arguing that

the letter constituted inadmissible hearsay and should therefore not have been read

to the jury. Further, because damages are an essential element of a negligence

claim, they argued that Plaintiff had failed to prove this element of his claim. The

district judge denied the motion for a new trial and reasoned as follows:

> [T]he court's [decision to allow Plaintiff's counsel to read the letter] was not erroneous and was consistent with its earlier order. The letter did not come in as an exhibit, as the order provided. Additionally, in the video deposition Dr. Burkus authenticated the letter, stating that it was "a letter I wrote and signed regarding the surgeries that [Plaintiff] would need and the anticipated costs for these services." Defense counsel also cross-examined Dr. Burkus on the letter. During cross-examination, Dr. Burkus confirmed it was a letter he wrote, dated July 25, 2013, and he discussed how the letter was written and the method he used to determine the costs of the past and future medical procedures.
>
> Thus, defense counsel had an adequate opportunity to cross-examine Dr. Burkus about the letter, and did so in the video deposition. Further, the court's ruling at trial was consistent with its pretrial order regarding the letter. For these reasons, the court finds that this ruling did not affect the Defendants' "substantial rights" and that the reading of the letter is not an adequate ground to justify a new trial under Fed. R. Civ. P. 59.

10

In this appeal, Defendants raise essentially the same argument: the letter constitutes hearsay and admitting the letter prejudiced Defendants because Plaintiff otherwise failed to establish the cost of the anticipated surgery. As discussed above, we review the district judge's decision for abuse of discretion and, if an error occurred, we reverse only if the error substantially influenced the outcome of the action.

Given the circumstances described above, we find no abuse of discretion in how the district court handled this matter. Clearly, during his deposition, Dr. Burkus adopted the number stated in the letter as the reasonable costs of the surgical fusion. Both Plaintiff's and defense counsel questioned him about this matter, and both knew full well what the number was. Albeit Plaintiff's counsel could have avoided any question about this issue had he simply asked the doctor to state for the record the number that both defense and Plaintiff's counsel, as well as the doctor, were referring to during the testimony,[4] there was no doubt about what that number was nor that Dr. Burkus adopted the number in his testimony setting out the reasonable costs of the surgery.

In sum, we find that the district judge did not abuse his discretion in allowing Plaintiff's counsel to read Dr. Burkus's letter to the jury.

---

[4] Given our determination that the district court did not abuse its discretion in its handling of this issue, we do not need to decide whether the district court was wrong in its initial conclusion that the doctor's letter setting out the fees for the surgical procedure was hearsay.

11

## III.    Admission of South Star's "Following" Policy

At trial, Plaintiff's counsel solicited testimony from South Star's corporate representative that a company policy "required [South Star] drivers to stay a minimum of seven seconds behind any vehicles that they're following down the road."  Counsel further alluded to the policy during a subsequent cross-examination of Defendants' expert witness.

Defendants argue that the district judge erred in admitting evidence of South Star's "following" policy because the case did not involve a situation in which Defendants' truck driver was arguably driving too close, meaning the policy was irrelevant.  We find no abuse of discretion.  The district court noted that there was evidence that would have supported a theory that the truck driver hit Plaintiff's vehicle because the driver failed to keep enough distance between his vehicle and traffic ahead of him.  In addition, Defendants had the opportunity to adduce evidence and argue that non-adherence to the above policy was irrelevant to the cause of the accident.

In addition, substantial evidence of negligence existed otherwise.  *See Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 163 (8th Cir. 1981) ("[I]f the court had erred in admitting [an inapplicable safety] standard, there was such strong other evidence of negligence . . . that the . . . standard was merely cumulative evidence.  Erroneous admission of cumulative evidence is harmless

12

error."). In Alabama, "[w]hether a person involved in an accident acted reasonably in operating his motor vehicle depends on all of the circumstances surrounding the accident." *Senn v. Ala. Gas Corp.*, 619 So.2d 1320, 1322 (Ala. 1993).

Specifically, there was evidence (1) that Plaintiff and his cousin each used their turn signals, (2) that Gill admitted seeing the two vehicles' signals, (3) that other vehicles behind Plaintiff shifted from the right lane to the left lane to avoid crashing into Plaintiff, (4) that soon after the crash, Gill failed to offer an explanation to the investigating officer for not shifting to the left lane, (5) that neither Plaintiff nor his cousin heard Gill brake, (6) that Gill's elevated position in the tractor-trailer allowed him to view the road better than an ordinary driver, and (7) that Gill could have seen Plaintiff from a quarter to a half mile away and could have stopped his tractor-trailer within that distance.

Accordingly, even had there been any error in admission of South Star's policy, the error was harmless. In short, we find no reversible error based on the district court's admission of evidence of this policy.

## IV.    Blood Pressure Testimony

Finally, Defendants argue that the district court should have granted their motion for a new trial based on Plaintiff's testimony and argument that he had failed to have the surgical fusion procedure done in the period of time since the accident because his doctor had refused to perform the procedure until Plaintiff's

13

blood pressure could be lowered.  Defendants argue that Plaintiff's response

constituted hearsay as it was Plaintiff's doctor who made the diagnosis of high

blood pressure, not Plaintiff.  We find no abuse of discretion by the district court in

permitting Plaintiff to so testify.

In arguing that Plaintiff's injuries were not as serious as he alleged,

Defendants had focused on the fact that Plaintiff had failed to have the surgery

performed, even after he had obtained "Obamacare" insurance.  In particular,

defense counsel pushed Plaintiff on this point during cross-examination.  In

response, as set out above, Plaintiff explained that it was his doctor's decision not

to perform the surgery—based on Plaintiff's high blood pressure—that had

prompted Plaintiff's delay in getting the surgery.

The district court found no ground for a new trial based on the above

because defense counsel had invited the response through his questioning of

Plaintiff.[5]  We agree.  *See United States v. Parikh*, 858 F.2d 688, 695 (11th Cir.

1988) (upholding admission of out-of-court statements by a government witness,

---

[5]  Both parties assume that Plaintiff's testimony constituted hearsay.  We note, however, that a witness may explain why he has or has not taken a particular action without necessarily running afoul of the rule against admission of hearsay evidence, which is evidence offered to prove the truth of the matter asserted.  *See United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994) ("The testimony at issue here was not offered to prove the truth of the matter asserted, but only to prove why [the listener] acted as he did.  It was not hearsay, and it was not error for the district court to admit it."); *see also United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (explaining that statements "offered only to show their effect on the listener" are not hearsay because the statements are offered not for the truth of the matter asserted but to "provide[] a context to assess [listener]'s response").  Nevertheless, even assuming that the statement was hearsay, Defendants invited the response.

when responding to an inquiry by defense counsel, on ground that counsel "invited" the error). *Accord United States v. Sarras*, 575 F.3d 1191, 1216 (11th Cir. 2009) ("Because [the defendant]'s question elicited the very testimony about which he now complains, he is entitled to no relief."); *United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001) (Easterbrook, J.) ("If . . . defense counsel elicits testimony at trial, the defendant can't argue on appeal that the evidence was hearsay and should have been excluded.").

In sum, Defendants invited Plaintiff's testimony. Moreover, even had jurors considered Plaintiff's testimony as establishing the truth of the matter asserted— that Plaintiff actually has high blood pressure—Defendants would not have been unfairly prejudiced by that inference. Plaintiff based his claim of damages on past medical bills and the existence of serious spinal injuries that he sustained as a result of the collision. High blood pressure was neither a result of the collision nor a ground for damages. Hence, whether or not Plaintiff had high blood pressure, this matter did not factor into the calculation of damages. Plaintiff's testimony that his doctors had used his high blood pressure as their explanation for not performing the surgery prior to trial <u>was</u>, however, relevant to negating Defendant's argument that the delay in the surgery demonstrated that Plaintiff had not, in fact, suffered the injuries he alleged. Thus, we find no abuse of discretion by the district court on this ruling.

15

## <u>CONCLUSION</u>

We find either no reversible error in any of the challenged evidentiary rulings. Accordingly, we **AFFIRM**.